[Cite as *In re R.S.*, 2012-Ohio-2016.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

IN THE MATTER OF:          :

    R.S.                 :    Case No.   11CA29

Alleged Abused/Neglected/       :
 Dependent Child.

                          :    DECISION AND JUDGMENT ENTRY

                          :

_____

APPEARANCES:

COUNSEL FOR APPELLANT:    Susan M. Zurface Daniels, P.O. Box 589, Hillsboro, Ohio
                                      45133

COUNSEL FOR APPELLEE:     Anneka P. Collins, Highland County Prosecuting Attorney,
                                     and Molly Bolek, Assistant Prosecuting Attorney, 112
                                     Governor Foraker Place, Hillsboro, Ohio   45133

CIVIL CASE FROM COMMON PLEAS COURT, JUVENILE DIVISION
DATE JOURNALIZED: 4-30-12
ABELE, P.J.

{¶ 1} This is an appeal from a Highland County Common Pleas Court, Juvenile Division, judgment that awarded Highland County Children Services (HCCS), appellee herein, permanent custody of R.S. (born February 4, 1998).

{¶ 2} L.M., the child's natural mother and appellant herein, assigns the following errors for review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT'S FINDING THAT THE MOTHER HAD ABANDONED THE CHILD PURSUANT TO REVISED CODE 2151.011(C) WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE THAT THE MOTHER HAD FAILED TO VISIT OR MAINTAIN CONTACT WITH THE CHILD FOR A PERIOD OF NINETY DAYS OR MORE."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT'S FINDINGS RELATING TO THE BEST INTEREST FACTORS OUTLINED IN REVISED CODE 2151.414(D)(1) ARE NOT SUPPORTED BY SUFFICIENT EVIDENCE IN THE RECORD."

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT COMMITTED PLAIN ERROR IN PERMITTING A NON-ATTORNEY GUARDIAN AD LITEM TO CROSS-EXAMINE AND RE-CROSS EXAMINE WITNESSES IN THE CASE CAUSING SUCH AN IRREGULARITY IN THE PROCEEDINGS THAT A NEW TRIAL IS WARRANTED IN THE INTEREST OF JUSTICE."

{¶ 3} On September 30, 2009, appellee received a referral that appellant was using illegal drugs, had a felony warrant for her arrest, did not have food in her home, and that the child had been locked out of the apartment for hours at a time. When a caseworker finally obtained access to the family, the caseworker observed food in the home, and the child reported that he had a key to enter the home when appellant was away. Appellant admitted that she had an outstanding warrant for her arrest in Clinton County as a result of a burglary indictment. Appellant also agreed to complete a random drug screen within twenty-four hours, but she failed to do so.

{¶ 4} On October 7, 2009, appellee received another referral that the child was locked out of the apartment and that appellant's whereabouts were unknown. The caseworker immediately responded and located a relative to care for the child. Around 3:00 p.m. the next day, appellant

finally contacted appellee. Caseworkers responded to appellant's apartment to discuss the situation. A relative also was present and advised the caseworkers that appellant had not contacted him until that day. After appellant agreed to turn herself in on the Clinton County warrant and was transported to the hospital for a random drug screen, she tested positive for marijuana and amphetamines. The child was placed with his maternal step-grandfather.

{¶ 5} On October 15, 2009, appellee filed a complaint that alleged the child to be an abused, neglected, or dependent child and requested protective supervision. On December 18, 2009, the trial court adjudicated the child a dependent child and dismissed the abuse and neglect allegations. The court directed the child to remain in appellee's protective supervision.

{¶ 6} Appellee subsequently developed a case plan that required appellant to (1) complete parenting classes through an agency-approved provider, (2) complete a substance abuse assessment and follow treatment recommendations, (3) complete random drug screens and abstain from substance abuse, (4) complete a mental health assessment and comply with treatment recommendations, and (5) comply with the terms of her probation.

{¶ 7} On June 10, 2010, appellee filed a motion for temporary custody. Appellee asserted that appellant did not comply with two requests for random drug screens and that when she did comply, she tested positive for marijuana. Appellee further alleged that appellant was terminated from counseling services and parenting classes due to absences. Appellant subsequently agreed to place the child in appellee's temporary custody, and, on July 20, 2010, the trial court awarded appellee temporary custody.

{¶ 8}   In October 2010, appellee amended the case plan to require appellant to maintain consistent income so that she could provide for the child's basic needs and maintain stable housing for at least six months.

{¶ 9}   On September 21, 2011, appellee filed a motion to modify the disposition to permanent custody.   Appellee asserted that appellant failed to comply with the case plan in the following respects: (1) she has not completed parenting classes; (2) she was violated from the Alternatives to Violence parenting education classes due to missed appointments; (3) she has not fully completed substance abuse counseling; (4) she has not abstained from illegal drug use; (5) she has not fully completed mental health counseling; (6) she has not complied with the probation ordered from Clinton County; (7) she has not maintained constant employment and only recently obtained employment; and (8) she has not secured stable housing.   Appellee further alleged that appellant did not maintain consistent visitation with the child.

{¶ 10}  On October 27, 2011, the guardian ad litem filed a report.   In it, he stated that the child "was very upfront that he does not wish to return to his mother's custody and care.   He stated that she has always chosen friends over him and that if he goes back, his mother will go back to doing her former things again."   When the guardian ad litem asked the child about visits with his mother, the child stated that they are "'alright,' but did not express much enthusiasm."   The guardian ad litem reported that the child "had even asked his caseworker about terminating the visits."   The child advised the guardian that he

> "has shared with his mother that he does not want to return home.   She told him
> things would be good if he did. [The child] remarked that he does not understand
> how his mom will meet the $400.00 in rent with no real job.   He stated that he
> believes that his mom is telling him is 'all lies.' [The child] commented that about
> three months after coming into care, he decided he would not be going home. [The

child] stated there are times when his mom seems to care, but there are times when
she does not.   He stated that she does not seem like a mom to him and he does not
feel a bond with her."

The guardian ad litem stated that when he "sought clarification from [the child] as to his wishes, he

again stated he wants to be in the permanent custody of the agency and does not wish to return

home or reunify with his mother."

{¶ 11}  The guardian ad litem observed that appellant's case plan compliance was

"minimal" and only after appellee filed for permanent custody did she undertake "any major

activity."   With respect to appellant's case plan compliance, the guardian ad litem explained:

"At the writing of this report, [appellant] continues to have no housing of
her own, has not been at [her current employment] very long to demonstrate
stability, has only been compliant with [Family Recovery Services] for
approximately two months, continues to owe court fines, and has not fully
completed any services or tasks all the way.   She has shown some progress, but it is
concerning if this progress will continue, or if it is sincere."

{¶ 12}  The guardian ad litem thus believed that awarding appellee permanent custody

would serve the child's best interest and recommended that the court award appellee permanent

custody.

{¶ 13}  On November 3, 2011, the trial court held a permanent custody hearing.   At the

hearing, HCCS caseworker Tonya Farler[1] testified that the case plan required appellant to (1)

complete parenting class, (2) show that she could meet basic needs, (3) complete a substance abuse

assessment, (4) follow service provider recommendations, (5) submit to random drug screens, (6)

complete mental health assessment, and (7) obtain stable housing.   Farler stated that appellant has

---

[1] The trial transcript uses the "Farler" spelling.     However, appellant's brief notes that the correct spelling is "Farley."
In the interest of consistency, we will use the spelling that appears in the transcript.

not maintained stable housing, but, instead, has moved eleven times since appellee became involved with the family.   She testified that she did not see any "substantial efforts" to comply with the case plan until August of 2011, and that appellant "has not demonstrated consistent motivation to complete services."

{¶ 14}  Farler explained that appellant worked at Turning Point between August and October of 2011 as part of a "reporting program."   Farler stated that a "reporting program" is

> "a program to assist individuals overcoming, to overcome massive barriers to obtain gainful employment.   That would be, for instance, if they had large restitutions that they needed to pay, or if they had fines or if they needed work history; or, if they had felonies that barred them from getting employment successfully, or lack of job training, they work with them at Turning Point to alleviate those barriers so that they are more employable."

She stated that appellant has not obtained employment since she left Turning Point.

{¶ 15}  Farler testified that appellant completed three sessions at Scioto Paint Valley Mental Health, but was terminated after she failed to contact the provider.   After appellee filed for permanent custody, appellant completed another assessment, but "she did not have a payor source, so no further services were offered to her."   Farler stated that appellant was terminated from parenting classes because she failed to comply with the program requirements.   Farler also testified that appellee has identified a certified foster family that is interested in adopting the child.

{¶ 16}  Family Recovery Services (FRS) counselor Jill Wilson testified that appellant initiated three services.   She explained that after the first, FRS recommended that appellant enter an intensive outpatient program.   Wilson stated that appellant subsequently was terminated from the program because she failed to attend.   Wilson testified that appellant underwent a second assessment, but did not follow through with the treatment recommendation.   Wilson stated that

appellant underwent a third assessment in August 2011 and had two unexcused absences.   Wilson

explained that appellant completed the program on October 31, 2011.

{¶ 17}  HCCS Family Advocacy Center Coordinator Melissa Wheaton stated that appellant

attended only thirty-one out of sixty-eight possible visits and that between April 21, 2011 and

August 2, 2011, appellant did not attend any visits.   Wheaton explained her observations of the

visits between appellant and the child:

> "There were times when it was pretty evident that * * * [R.S.] is a young
> man that's * * * he's experienced disappointment. [Appellant] has had to work
> pretty hard at times to engage him and * * * he seems to warm up at times; clearly
> there is some hesitation there at times, I think that he's afraid, that, you know, he's
> seen these inconsistencies before and it's unclear from one week to the next if it's
> going to be consistent.   Most of the time they seem to enjoy each other's company.
> And although he has made statements on one occasion or two to my staff members
> about being at visits just to humor his mother, uh, and not wanting to be there–he
> has said that a couple of times–it doesn't appear that way when you're observing the
> visit, you know, he seems to be enjoying it."

{¶ 18} Guardian ad litem Denny Kirk testified that after the child had been in appellee's

custody for approximately three months, the child informed the guardian ad litem that the child

believed he was "head[ed] towards permanent custody."   Kirk stated that the child explained to

him that the visits with appellant were not consistent, that appellant was not making progress on

the case plan, and that he believed he would eventually be permanently removed from appellant's

custody.   The child advised Kirk that he would like to be permanently removed from appellant's

home.   The guardian ad litem explained to the child that permanent custody "is pretty serious" but

the child

> "continued to state that he wanted to go for the permanency, that he did not feel that
> there was a strong enough bond there with his mother; that she often chooses
> friends and bad circumstances over him.   He further stated that he did not feel that
> there would be any long-term improvement; that while there is a case plan and

while there are some services underway, he felt like that she would back-slide, he claimed she had done that before, before he went into custody, and that she would do it again. He just basically stated that he felt like it was time to move on and wanted to be in the permanent custody of the agency."

Kirk further stated that the child asked whether the visitations with appellant could be reduced or shortened.

{¶ 19} Kirk recommended that the court grant appellee permanent custody. He recognized that appellant has made some attempts to comply with the case plan, but stated that she has only done so at the "11th hour." Kirk explained that until two months before the permanent custody hearing, appellant made little progress on her case plan.

{¶ 20} Appellant testified regarding her recent compliance with the case plan. She stated that she has lived with grandfather, aunt and uncle since October 21, 2011, and that she intends to stay there until she can "get on [her] feet." Appellant explained that she plans to continue to attend college and look for employment. She stated that she is currently being counseled for substance abuse and attending Alcoholics and Narcotics Anonymous meetings. She also testified that she is receiving parenting counseling through a woman at her church.

{¶ 21} On November 3, 2011, the trial court awarded appellee permanent custody. The court found that under R.C. 2151.414(B)(1)(d), the child had been in appellee's temporary custody for twelve or more months of a consecutive twenty-two month period. The court found that under R.C. 2151.414(B)(1)(b), appellant abandoned the child because she "made no contact with her son for the period April 21, 2011 until August 2, 2011." The court further determined that appellant has not substantially complied with the case plan in the following respects: (1) she is not employed; (2) she does not have a permanent residence; (3) she has not completed mental health

requirements; and (4) she has not completed substance abuse requirements. The court observed that appellant exercised only thirty-one of the possible sixty-eight visitations. The court further noted that the child does not want to be returned to appellant but wishes to be placed in appellee's permanent custody.

{¶ 22} With respect to the best interest factors, the court explained: (1) "The child does not have a positive interaction or interrelationship with either parent"; (2) "The child is requesting permanent custody be granted to the agency so he may remain in foster care or be adopted. The child therefore has a positive relationship with his out-of-home providers"; (3) The child has been in the temporary care and custody of [appellee] since July 1, 2010, now over sixteen months"; (4) "The child is in need of a legally secure permanent placement which cannot be achieved without granting permanent custody to the agency. A permanent placement option is currently available through a foster care provider certified by the agency"; and (5) "both parents have 'abandoned' their son." The trial court thus determined that awarding appellee permanent custody would serve the child's best interest. This appeal followed.

I

{¶ 23} Appellant's first two assignments of error challenge the trial court's permanent custody decision. Because the same principles govern her first two assignments of error, we have therefore combined them for ease of analysis.

{¶ 24} In her first assignment of error, appellant asserts that the record does not contain sufficient clear and convincing evidence to support the trial court's R.C. 2151.414(B)(1)(b) finding that she abandoned the child. In particular, she asserts that sufficient evidence does not exist that she failed to visit or maintain contact with the child for ninety days or more.

{¶ 25} Appellee argues that the statute creates a presumption of abandonment, which then shifts the burden to the parent to show otherwise. Appellee further asserts that even if the trial court's abandonment finding is erroneous, the court found that the child had been in appellee's custody for twelve or more months of a consecutive twenty-two month period under R.C. 2151.414(B)(1)(d). Thus, appellee contends, in essence, that the trial court's abandonment finding is superfluous and renders any error in that finding harmless.

{¶ 26} In her second assignment of error, appellant asserts that sufficient evidence does not support the trial court's best interest findings.

A

STANDARD OF REVIEW

{¶ 27} Generally, an appellate court will not reverse a trial court's permanent custody decision if some competent and credible evidence supports the judgment. In re Perry, 4th Dist. Nos. 06CA648 and 06CA649, 2006–Ohio–6128, ¶40, citing State v. Schiebel, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). Thus, our review of a trial court's permanent custody decision is deferential. In re Hilyard, Vinton App. Nos. 05CA600, 05CA601, 05CA602, 05CA603, 05CA604, 05CA606, 05CA607, 05CA608, 05CA609, ¶17, 2006-Ohio-1965. Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." Schiebel, 55 Ohio St.3d at 74. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in Seasons Coal Co. v. Cleveland, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984): "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able

to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well (Emphasis sic)." Davis v. Flickinger, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997). Accord In re Christian, 4th Dist. No. 04CA10, 2004–Ohio–3146, ¶7.

B

STANDARD FOR GRANTING PERMANENT CUSTODY

{¶ 28} A trial court may not grant a permanent custody motion absent clear and convincing evidence to support the judgment. "Clear and convincing evidence" means:

> "The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal."

In re Estate of Haynes, 25 Ohio St.3d 101, 103–04, 495 N.E.2d 23 (1986). Accord Schiebel, 55 Ohio St.3d at 74. In reviewing whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Schiebel, 55 Ohio St.3d at 74.

C

PERMANENT CUSTODY PRINCIPLES

{¶ 29} A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children. Santosky

v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); In re Murray, 52 Ohio St.3d

155, 157, 556 N.E.2d 1169 (1990).   Accord In re D.A., 113 Ohio St.3d 88, 2007–Ohio–1105, 862

N.E.2d 829, ¶9.   A parent's rights, however, are not absolute.   D.A. at ¶11. Rather, "'it is plain

that the natural rights of a parent * * * are always subject to the ultimate welfare of the child,

which is the polestar or controlling principle to be observed.'"   In re Cunningham, 59 Ohio St.2d

100, 106, 391 N.E.2d 1034 (1979), quoting In re R.J.C., 300 So.2d 54, 58 (Fla.App.1974).   Thus,

the state may terminate parental rights when a child's best interest demands such termination.

D.A. at ¶11.

{¶ 30}  Before a court may award a children services agency permanent custody of a child,

R.C. 2151.414(A)(1) requires the court to hold a hearing.   The primary purpose of the hearing is to

allow the court to determine whether the child's best interests would be served by permanently

terminating the parental relationship and by awarding permanent custody to the agency.   See R.C.

2151.414(A)(1).   Additionally, when considering whether to grant a children services agency

permanent custody, a trial court should consider the underlying principles of R.C. Chapter 2151.01:

> (A) To provide for the care, protection, and mental and physical
> development of children * * *;
> * * *
> (B) To achieve the foregoing purpose[], whenever possible, in a family
> environment, separating the child from its parents only when necessary for his
> welfare or in the interests of public safety.

D

PERMANENT CUSTODY FRAMEWORK

{¶ 31} R.C. 2151.414(B) allows a trial court to award a children services agency permanent custody of a child if clear and convincing evidence demonstrates that granting permanent custody would serve the child's best interests and that at least one of the following factors exists:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b) The child is abandoned.
(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.
For the purposes of division (B)(1) of this section, a child shall be

considered to have entered the temporary custody of an agency on the earlier of the

date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the

date that is sixty days after the removal of the child from home.

{¶ 32} Thus, before a trial court may award a children services agency permanent custody, it must find: (1) that one of the circumstances described in R.C. 2151.414(B)(1) applies; and (2) that awarding the children services agency permanent custody would further the child's best interests.

{¶ 33} We further observe that the statute requires the trial court to find the existence of only one of the R.C. 2151.414(B)(1) factors.   See In re W.W., 1st Dist. Nos. C-110363 and C-110402, 2011-Ohio-4912, ¶54 (observing that if one of R.C. 2151.414(B)(1) factors exists, court need not find that other (B)(1) factors apply).   If the court finds that R.C. 2151.414(B)(1)(d) applies, then it need not also find that (1) the child cannot or should not be placed with either parent within a reasonable time, (2) the child is abandoned, or (3) the child is orphaned. Consequently, when considering a R.C. 2151.414(B)(1)(d) permanent custody motion, the only other consideration becomes the child's best interests.   E.g., In re T.F., 4th Dist. No. 07CA34, 2008–Ohio–1238, ¶23; In re Williams, 10th Dist. No. 02AP–924, 2002–Ohio–7205, ¶47; In re Dyal, 4th Dist. No. 01CA11 (Aug. 9, 2001).

E

BEST INTERESTS

{¶ 34} R.C. 2151.414(D) requires a trial court to consider specific factors to determine whether a child's best interests will be served by granting a children services agency permanent custody.   The factors include: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and

whether that type of placement can be achieved without a grant of permanent custody to the

agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.[2]

{¶ 35} In the case at bar, we do not believe that the trial court's judgment to award appellee

permanent custody is against the manifest weight of the evidence.   Clear and convincing evidence

---

[2]  R.C. 2151.414(E)(7) to (11) provide as follows:

(7) The parent has been convicted of or pleaded guilty to one of the following:

(a) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;

(b) An offense under section 2903.11, 2903.12, or 2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;

(c) An offense under division (B)(2) of section 2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;

(d) An offense under section 2907.02, 2907.03, 2907.04, 2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

(e) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a) or (d) of this section.

(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.

(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 [2151.41.2] of the Revised Code.

(10) The parent has abandoned the child.

(11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 [2151.35.3] or 2151.415 [2151.41.5] of the Revised Code with respect to a sibling of the child. that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense[.]

supports the trial court's finding under R.C. 2151.414(B)(1)(d) that the child has been in appellee's custody for twelve or more months of a consecutive twenty-two month period.   The court adjudicated the child dependent on December 16, 2009.   The court awarded appellee temporary custody on July 20, 2010.   Thus, for purposes of R.C. 2151.414(B)(1)(d), the child entered appellee's temporary custody on the date the court adjudicated him dependent, i.e., December 16, 2009.   When appellee filed its September 2011 permanent custody motion, the child had been in its custody for twenty-one months.

{¶ 36} Because the trial court determined that R.C. 2151.414(B)(1)(d) applied, we need not consider appellant's assertion that clear and convincing evidence does not support its R.C. 2151.414(B)(1)(b) abandonment finding.   The statute requires a trial court to find the existence of only one of the R.C. 2151.414(B) factors.   Thus, any error that may exist with respect to its abandonment finding would not constitute reversible error.   In re R.H., 9th Dist. Nos. 11CA010002 and 11CA010003, 2011-Ohio-6749, ¶14.

{¶ 37} Moreover, clear and convincing evidence supports the trial court's finding that awarding appellee permanent custody will serve the child's best interest.   Regarding the first factor, the child's interactions and interrelationships, the court found that the child does not wish to return to his mother's custody and even requested, at one point, that the visitations cease.   The child further stated that he does not feel bonded to his mother.   The testimony presented at the permanent custody hearing supports these findings.   Furthermore, the child's statements demonstrate that he does not share a positive interaction or relationship with his mother.   Thus, clear and convincing evidence supports the trial court's finding that the child does not share a positive relationship with his mother.   With respect to the second factor, the child's wishes, the

guardian ad litem testified that the child unequivocally stated that he does not want to be returned to his mother. Additionally, the guardian ad litem recommended that the court award appellee permanent custody. Regarding the third factor, the child's custodial history, the evidence amply demonstrates that the child had been involved with appellee for nearly two years at the time appellee filed for permanent custody. Appellee attempted to maintain the child in appellant's care subject to its protective supervision, but appellant apparently could not provide adequate care for the child, thus requiring appellee to seek temporary, and eventually permanent custody. With respect to the fourth factor, the child's need for a legally secure permanent placement, the testimony from the permanent custody hearing demonstrates that appellant has been unable to provide a legally secure permanent home for the child. Thus, without appellee's intervention, the child would be without a legally secure permanent placement. With appellee's intervention, the child has been placed in a secure placement, with the goal of permanency or adoption. All of the foregoing evidence that was presented at the permanent custody hearing supports the trial court's finding that awarding appellee permanent custody would serve the child's best interests. Thus, its finding is not against the manifest weight of the evidence.

{¶ 38} To the extent that appellant challenges other factual findings, we do not believe that any error in those findings negates the trial court's best interest determination. The evidence discussed in the preceding paragraph supports the trial court's decision. If the trial court made other findings that might be interpreted to be erroneous, those findings do not affect our analysis in the preceding paragraph and would constitute harmless error.

{¶ 39} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's first and second assignments of error.

II

{¶ 40} In her third assignment of error, appellant asserts that the trial court erred by permitting a non-attorney guardian ad litem to cross-examine witnesses.

{¶ 41} We initially note that appellant did not object when the guardian ad litem posed questions to any of the witnesses.   Thus, we may recognize the error only if it constitutes plain error.   E.g., In re Etter, 134 Ohio App.3d 484, 492, 731 N.E.2d 694 (1998).   Generally, courts should exercise extreme caution when invoking the plain error doctrine, especially in civil cases. E.g., In re West, 4th Dist. No. 05CA4, 2005-Ohio-2977, ¶25.   Thus, courts should limit applying the doctrine to cases "involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process * * *."   Goldfuss v. Davidson, 79 Ohio St.3d 116, 122–123, 679 N.E.2d 1099 (1997).

{¶ 42} In In re J.L.R., 4th Dist. No. 08CA17, 2009-Ohio-5812, we determined that a guardian ad litem may not question witnesses.   We reasoned:

> "R.C. 2151.281(I) sets forth the general duties of a guardian ad litem and states that the guardian ad litem: 'shall perform whatever functions are necessary to protect the best interest of the child, including, but not limited to, investigation, mediation, monitoring court proceedings, and monitoring the services provided the child by the public children services agency or private child placing agency that has temporary or permanent custody of the child, and shall file any motions and other court papers that are in the best interest of the child.'
> * * * Sup.R. 48 * * * further outlines a guardian ad litem's responsibilities. As relevant to the issue of a non-attorney guardian ad litem questioning witnesses and performing other functions traditionally reserved to attorneys, subdivisions (D)(5) and (6) of the rule read:
> (5) A non-attorney guardian ad litem must avoid engaging in conduct that constitutes the unauthorized practice of law, be vigilant in performing the guardian ad litem's duties and request that the court appoint legal counsel, or otherwise

employ the services of an attorney, to undertake appropriate legal actions on behalf of the guardian ad litem in the case.

(6) A guardian ad litem who is an attorney may file pleadings, motions and other documents as appropriate under the applicable rules of procedure.

'Gov. Bar R. VI I(2)(A) defines the unauthorized practice of law as "the rendering of legal services for another by any person not admitted to practice in Ohio."' Cleveland Bar Assn. v. CompManagement, Inc., 111 Ohio St.3d 444, 462, 2006–Ohio–6108, 857 N.E.2d 95, ¶22. 'Any definition of the practice of law inevitably includes representation before a court, as well as the preparation of pleadings and other legal documents, the management of legal actions for clients, all advice related to law, and all actions taken on behalf of clients connected with the law.' Id. (citation omitted).

'"[L]imiting the practice of law to licensed attorneys is generally necessary to protect the public against incompetence, divided loyalties, and other attendant evils that are often associated with unskilled representation."' Id. at ¶23, quoting CompManagement I, 104 Ohio St.3d 168, 2004–Ohio–6506, 818 N.E.2d 1181, ¶39–40. However, 'representation may not always require the training and experience of an attorney and * * * "the protective interest" may be "outweighed by other important considerations."' Id., quoting CompManagement I, 104 Ohio St.3d 168, 2004–Ohio–6506, 818 N.E.2d 1181, ¶39–40.

* * * * We believe * * * that construing [Sup.R. 48] along with the Ohio Supreme Court's interpretation of the "unauthorized practice of law" leads to the conclusion that a non-attorney guardian ad litem may not question witnesses or file pleadings, motions or other legal documents in a juvenile court proceeding. Questioning of witnesses during a court proceeding constitutes the practice of law. See Cleveland Bar Assn. v. CompManagement, Inc., 111 Ohio St.3d 444, 462, 2006–Ohio–6108, 857 N.E.2d 95, ¶67 (stating that "any direct questioning of a witness would indisputably constitute the practice of law"). Moreover, the rule permits a guardian ad litem who is an attorney to file pleadings and motions. Under the doctrine of expressio unius est exclusio alterius, the express inclusion of permitting a guardian ad litem who is an attorney to file pleadings and motion implies the exclusion of a guardian ad litem who is not an attorney from filing pleadings and motions. Sup.R. 48 evinces an intent to prohibit a non-attorney guardian ad litem from acting as legal counsel for the child. Thus, to the extent the trial court permitted the guardian ad litem in the case sub judice, who was not an attorney, to question witness and to file pleadings, motions, or other documents, Sup.R. 48 prohibits these actions. Appellant has not, however, established that the error caused her prejudice. Consequently, the error is harmless and does not require us to reverse the trial court's judgment. See Civ.R. 61."

Id. at ¶¶46-50 (footnotes omitted.)

{¶ 43} Based upon our holding in J.L.R., we disagree with appellant that the guardian ad litem's questioning of a witness mandates a reversal.   See D.W. v. T.R., 6th Dist. No. L-11-1099, 2012-Ohio-614, ¶23 (declining to reverse trial court's judgment even though non-attorney guardian ad litem improperly submitted closing argument).   Furthermore, we observe that the "Rules of Superintendence are only general guidelines for the court to follow at its discretion and do not give rise to substantive rights."   In re K.V., 6th Dist. No. L-11-1087, 2012-Ohio-190, ¶27.   "Sup.R. 48 is a general guideline that does not have the force of statutory law, [and thus,] an appellant does not have any substantive right to enforce it."   Rice v. Rice, 5th Dist. No. 10CAF110091, 2011–Ohio–3099, ¶40.   In other words, the Ohio Rules of Superintendence are "purely internal housekeeping rules which do not create substantive rights in individuals or procedural law." Elson v. Plokhooy, 3rd Dist. No. 17–10–24, 2011–Ohio–3009, ¶40.   Accord In re E.W., 4th Dist. Nos. 10CA18, 10CA19, and 10CA20, 2011-Ohio-2123, ¶12; In re K.G., 9th Dist. No. 10CA0016, 2010–Ohio–4399, ¶12; State v. Gettys, 49 Ohio App.2d 241, 243, 360 N.E.2d 735 (1976).   Courts have therefore determined that a failure to comply with Sup.R. 48 is not grounds for reversal.   In re B.K., 12th Dist. No. CA2010-12-324, 2011-Ohio-4470, ¶23 (citation omitted).   Thus, appellant does not have any substantive right to enforce under Sup.R. 48, and any non-compliance with the rule is not grounds for reversal.   Id.; E.W.

{¶ 44} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's third assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Kline, J. & McFarland, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele
Presiding Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.