[Cite as *In re H.C.*, 2026-Ohio-12.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

IN RE: H.C.,                                    :    Case No.
                                                     25CA12

                                                :

Adjudicated Dependent          :    DECISION AND JUDGMENT ENTRY
   Child.

_____

APPEARANCES:

Alana Van Gundy, Bellbrook Ohio, for appellant.[1]

Anneka P. Collins, Highland County Prosecuting Attorney, and
Molly Bolek, Highland County Assistant Prosecuting Attorney,
Hillsboro, Ohio, for appellee.
_____
CIVIL CASE FROM COMMON PLEAS COURT, JUVENILE DIVISION
DATE JOURNALIZED:
Abele, J.

{¶1}  This is an appeal from a Highland County Common Pleas

Court, Juvenile Division, judgment that granted Highland County

Department of Jobs and Family Services, Child Protection

Division, appellee herein, permanent custody of a four-year-old

child, H.C.

_____
[1] Different counsel represented appellant during the trial court
proceedings.

**{¶2}** Appellant, J.C., the child's biological father, raises the following assignments of error for review:

> FIRST ASSIGNMENT OF ERROR:
>
> THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE HIGHLAND COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES AS THEY FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT GROUNDS EXISTED FOR PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
>
> SECOND ASSIGNMENT OF ERROR:
>
> "THE JUVENILE COURT ERRED IN FINDING THAT PERMANENT CUSTODY TO THE AGENCY WAS IN THE BEST INTEREST OF THE CHILD, WHEN THAT FINDING WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶3}** In March 2023, as the child approached her second birthday, appellee received a report that the child's mother had been using marijuana around the child. Appellee subsequently filed a complaint that alleged the child to be an abused, neglected, "and/or" dependent child and asked the trial court to place the child in its temporary custody. Appellee additionally requested emergency, temporary custody of the child, which the trial court granted.

**{¶4}** The next month, the trial court adjudicated the child a dependent child and dismissed the abuse and neglect allegations. The court later entered a dispositional order that placed the child in appellee's temporary custody through March 2024. The court subsequently extended this temporary custody

order through September 2024.

{¶5} In April 2024, appellee became concerned that the child's mother appeared to be in a relationship with an individual, C.W., who had a violent criminal history. A caseworker spoke with the child's mother about appellee's concerns, but the child's mother denied any relationship with C.W.

{¶6} On August 8, 2024, appellee filed a permanent custody motion. A few weeks later, a caseworker met with the child's mother in the home. At the time, C.W. was present. The caseworker asked the child's mother about a March 2024 incident, when C.W. dragged the mother into the apartment. The mother stated that she and C.W. are now sober and violence is no longer a concern. The mother also asked the caseworker if appellee would add C.W. to the case plan. Appellee did not, however, add C.W. to the case plan.

{¶7} In November 2024, the mother advised her caseworker of her pregnancy with C.W.'s child. On February 12, 2025, the mother and C.W. married.

{¶8} On February 28, 2025, the trial court held a hearing to consider appellee's permanent custody motion. Appellant did not appear.

{¶9} At the permanent custody hearing, appellee presented evidence that, although the mother recently completed the tasks

contained in her case plan, appellee remained concerned about the mother's ability to provide the child with a safe home. Appellee's witnesses explained that the mother's involvement with C.W. raised concerns that the mother may not adequately protect the child from harm, whether due to C.W.'s violent past or his drug use. One of the caseworkers explained that the mother's "involvement in unhealthy relationships . . . can possibly be a safety threat to the child because of physical violence that occurs in the home."

{¶10} The child's guardian ad litem (GAL) testified and recommended that the court place the child in appellee's permanent custody. The GAL indicated that the child is thriving in the foster home and believed that placing the child in appellee's permanent custody would be in the child's best interest. The GAL observed that the mother had nearly two years to complete the case plan goals, but she did not complete drug and alcohol treatment until two weeks before the permanent custody hearing. The GAL suggested that the mother's conduct demonstrated that she did not prioritize her relationship with her child. The GAL also found the mother's relationship with C.W. to be problematic. She reported that C.W. had been involved in "21 traffic cases (including multiple OVI) and an additional 21 criminal cases including multiple domestic violence charges, violation of protection order charges and drug

paraphernalia charges."  The GAL stated that she would have "a very big concern" with the child in the same home as C.W.

{¶11} C.W.'s probation officer also testified that C.W. had previous criminal convictions for menacing, disorderly conduct, and burglary.  C.W.'s disorderly conduct conviction occurred in July 2024, after he had engaged in violent acts directed toward the mother.

{¶12} The mother testified, in relevant part, that in the summer of 2024, she became intimately involved with C.W., and, in August 2024, he moved in with her.  The mother knew that appellee had concerns about C.W. due to his criminal history, but she believed that C.W. had "changed a lot."  The mother agreed that, in March 2024, C.W. grabbed her as she tried to exit his residence, but she did not believe that C.W. had been physically aggressive with her.  She further stated that, in June 2024, she filed a criminal complaint against C.W., after he damaged one of her candles and crushed methamphetamine on her kitchen table.  The mother again minimized his conduct.  She indicated that after this June 2024 incident, C.W. improved his life and now is sober.  The mother stated that C.W. wants to help her reunify with her child and that she would trust C.W. to be around her child.

{¶13} On March 5, 2025, the trial court awarded appellee permanent custody of the child.  The court found that the child

had been in appellee's temporary custody for 12 or more months of a consecutive 22-month period and that placing the child in appellee's permanent custody is in the child's best interest. The court stated that the child is bonded with the foster family and is thriving. The court additionally noted that the foster parents are willing to adopt the child. The court further observed that the child's GAL recommended that the court place the child in appellee's permanent custody.

{¶14} With respect to appellant, the trial court stated that he did not have any contact with the child between June 2023 and August 2024. The court thus determined that he had abandoned the child. The court also observed that appellant did not appear for the permanent custody hearing, did not maintain contact with appellee throughout the case, and did not complete a case plan.

{¶15} The trial court found that the mother "has been unable or unwilling to provide a safe, secure and suitable home for [the child] during the pendency of this action." The court stated that the mother has a history of "associating with abusive men" and remarked that her current husband "is certainly no exception." The court concluded that the mother "has elected to live a drug addictive life without regard for the welfare or benefit of [the child]" and that "[h]er choice of men disqualifies her to be trusted as a responsible protective

mother." The court was not convinced that the mother would be able or willing to protect the child "from violent adult companions and environments where the safety of [the child] is at risk."

{¶16} The trial court further indicated that "[t]he past history of a parent is one of the best predictors of their future behavior" and that "some of the most reliable evidence for a [c]ourt to consider is the past history of the parents." The court stated, "That finding certainly applies to this case." The court thus concluded that the child could not achieve a legally secure placement without granting appellee permanent custody and that placing her in appellee's permanent custody would be in her best interest. The court therefore granted appellee permanent custody of the child. This appeal followed.

{¶17} In his two assignments of error, appellant argues that the trial court's permanent custody judgment is against the manifest weight of the evidence. In his second assignment of error, appellant additionally contends that the record does not contain sufficient evidence to support the trial court's best interest determination. For ease of discussion, we have combined our review of the two assignments of error.

A

{¶18} Generally, a reviewing court will not disturb a trial

court's permanent custody decision unless the decision is

against the manifest weight of the evidence.  *E.g., In re B.E.*,

2014-Ohio-3178, ¶ 27 (4th Dist.); *In re R.S.*, 2013-Ohio-5569, ¶

29 (4th Dist.); *accord In re Z.C.*, 2023-Ohio-4703, ¶ 1.

> "Weight of the evidence concerns 'the inclination of the
> greater amount of credible evidence, offered in a trial,
> to support one side of the issue rather than the other.
> It indicates clearly to the jury that the party having
> the burden of proof will be entitled to their verdict,
> if, on weighing the evidence in their minds, they shall
> find the greater amount of credible evidence sustains
> the issue which is to be established before them.  Weight
> is not a question of mathematics, but depends on its
> effect in inducing belief.'"

*Eastley v. Volkman*, 2012-Ohio-2179, ¶ 12, quoting *State v.*

*Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Black's Law*

*Dictionary* 1594 (6th Ed.1990).

{¶19} When an appellate court reviews whether a trial

court's permanent custody decision is against the manifest

weight of the evidence, the court "'"weighs the evidence and all

reasonable inferences, considers the credibility of witnesses

and determines whether in resolving conflicts in the evidence,

the [fact-finder] clearly lost its way and created such a

manifest miscarriage of justice that the [judgment] must be

reversed and a new trial ordered."'"  *Eastley*, 2012-Ohio-2179,

at ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115

(9th Dist. 2001), quoting *Thompkins*, 78 Ohio St.3d at 387,

quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.

1983); *accord In re Pittman*, 2002-Ohio-2208, ¶ 23-24 (9th

Dist.).  We further observe, however, that issues that relate to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact.  As the court explained in *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984):

> The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.

**{¶20}** Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well."  *Davis v. Flickinger*, 77 Ohio St.3d 415, 419 (1997); *accord In re Christian*, 2004-Ohio-3146, ¶ 7 (4th Dist.).

**{¶21}** The question that an appellate court must resolve when reviewing a permanent custody decision under the manifest weight of the evidence standard is "whether the juvenile court's findings . . . were supported by clear and convincing evidence."  *In re K.H.*, 2008-Ohio-4825, ¶ 43.  "Clear and convincing evidence" is

> the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established.  It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases.  It does not

    mean clear and unequivocal.

*In re Estate of Haynes*, 25 Ohio St.3d 101, 103-04 (1986).  In

determining whether a trial court based its decision upon clear

and convincing evidence, "a reviewing court will examine the

record to determine whether the trier of facts had sufficient

evidence before it to satisfy the requisite degree of proof."

*State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990); *accord In re*

*Holcomb*, 18 Ohio St.3d 361, 368 (1985), citing *Cross v. Ledford*,

161 Ohio St. 469 (1954) ("Once the clear and convincing standard

has been met to the satisfaction of the [trial] court, the

reviewing court must examine the record and determine if the

trier of fact had sufficient evidence before it to satisfy this

burden of proof."); *In re Adoption of Lay*, 25 Ohio St.3d 41, 42-

43 (1986); *compare In re Adoption of Masa*, 23 Ohio St.3d 163,

165 (1986) (whether a fact has been "proven by clear and

convincing evidence in a particular case is a determination for

the [trial] court and will not be disturbed on appeal unless

such determination is against the manifest weight of the

evidence").

    **{¶22}** Thus, if a children services agency presented

competent and credible evidence upon which the trier of fact

reasonably could have formed a firm belief that permanent

custody is warranted, the court's decision is not against the

manifest weight of the evidence.  *In re R.M.*, 2013-Ohio-3588, ¶

62 (4th Dist.); *see also In re R.L.*, 2012-Ohio-6049, ¶ 17 (2d

Dist.), quoting *In re A.U.*, 2008-Ohio-187, ¶ 9 (2d Dist.) ("A

reviewing court will not overturn a court's grant of permanent

custody to the state as being contrary to the manifest weight of

the evidence 'if the record contains competent, credible

evidence by which the court could have formed a firm belief or

conviction that the essential statutory elements . . . have been

established.'").

{¶23} Once a reviewing court finishes its examination, the

judgment may be reversed only if it appears that the fact-

finder, when resolving the conflicts in evidence, "'clearly lost

its way and created such a manifest miscarriage of justice that

the [judgment] must be reversed and a new trial ordered.'"

*Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20 Ohio App.3d

at 175.  A reviewing court should find a trial court's permanent

custody judgment against the manifest weight of the evidence

only in the "'exceptional case in which the evidence weighs

heavily against the [decision].'"  *Id.*, quoting *Martin*, 20 Ohio

App.3d at 175; *see Black's* (12th ed. 2024) (the phrase "manifest

weight of the evidence" "denotes a deferential standard of

review under which a verdict will be reversed or disregarded

only if another outcome is obviously correct and the verdict is

clearly unsupported by the evidence").

{¶24} A reviewing court also may reverse a trial court's

permanent custody judgment if the record does not contain sufficient evidence to support it.  *See Z.C.*, 2023-Ohio-4703, at ¶ 1.  When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether "the evidence is legally sufficient to support the [judgment] as a matter of law."  *See Thompkins*, 78 Ohio St.3d at 386*.*

B

**{¶25}** Courts must recognize that "parents' interest in the care, custody, and control of their children 'is perhaps the oldest of the fundamental liberty interests recognized by th[e United States Supreme] Court.'"  *In re B.C.*, 2014-Ohio-4558, ¶ 19, quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000).  Indeed, "the right to raise one's children is an 'essential' and 'basic' civil right."  *In re Murray*, 52 Ohio St.3d 155, 157 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *accord In re Hayes*, 79 Ohio St.3d 46, 48 (1997); *see Santosky v. Kramer*, 455 U.S. 745, 753 (1982) ("natural parents have a fundamental right to the care and custody of their children").  Thus, "parents who are 'suitable' have a 'paramount' right to the custody of their children."  *B.C.* at ¶ 19, quoting *In re Perales*, 52 Ohio St.2d 89, 97 (1977), citing *Clark v. Bayer*, 32 Ohio St. 299, 310 (1877); *Murray*, 52 Ohio St.3d at 157.

**{¶26}** A parent's rights, however, are not absolute.  *In re*

*D.A.*, 2007-Ohio-1105, ¶ 11.  Rather, "'it is plain that the natural rights of a parent . . . are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'"  *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979), quoting *In re R.J.C.*, 300 So.2d 54, 58 (Fla. App. 1974).  Thus, the State may terminate parental rights when a child's best interest demands such termination. *D.A.* at ¶ 11.

{¶27} Before a court may award a children services agency permanent custody of a child, R.C. 2151.414(A)(1) requires the court to hold a hearing.  The primary purpose of the hearing is to allow the court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency.  *Id.*  Additionally, when considering whether to grant a children services agency permanent custody, a trial court should consider the underlying purposes of R.C. Chapter 2151: "to care for and protect children, 'whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety.'"  *In re C.F.*, 2007-Ohio-1104, ¶ 29, quoting R.C. 2151.01(A).

C

{¶28} A children services agency may obtain permanent

custody of a child by (1) requesting it in the abuse, neglect, or dependency complaint under R.C. 2151.353, or (2) filing a motion under R.C. 2151.413 after obtaining temporary custody. In this case, appellee sought permanent custody by filing a motion under R.C. 2151.413. When an agency files a permanent custody motion under R.C. 2151.413, R.C. 2151.414 applies. R.C. 2151.414(A).

{¶29} R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that any of the factors listed in R.C. 2151.414(B)(1)(a) to (e) apply. As relevant in the case sub judice, R.C. 2151.414(B)(1)(b) and (d) provide that the court may grant an agency permanent custody of a child if "[t]he child is abandoned" or "has been in the temporary custody of one or more public children services agencies . . . for twelve or more months of a consecutive twenty-two-month period. . ."

R.C. 2151.414(B)(1)(b) and (d)

{¶30} In his first assignment of error, appellant argues that the evidence does not support the trial court's finding that he abandoned the child. Appellant agrees, however, that the evidence supports the court's finding that the child had been in appellee's temporary custody for more than 12 months of

a consecutive 22-month period.

{¶31} We observe that R.C. 2151.414(B)(1) requires the trial court to find the existence of only one of the factors listed in R.C. 2151.414(B)(1)(a) to (e). *See In re W.W.*, 2011-Ohio-4912, ¶ 54 (1st Dist.) (if one of R.C. 2151.414(B)(1) factors exists, court need not find that other (B)(1) factors apply). If the court finds that R.C. 2151.414(B)(1)(d) applies, then it need not also find that the child is abandoned. *See In re A.P.*, 2022-Ohio-1577, ¶ 36 (4th Dist.). Thus, when considering a R.C. 2151.414(B)(1)(d) permanent custody motion, the only other consideration becomes the child's best interest. *In re N.S.N.*, 2015-Ohio-2486, ¶ 52 (4th Dist.); *In re R.S.*, 2012-Ohio-2016, ¶ 31 (4th Dist.).

{¶32} In the case at bar, the trial court found that (1) R.C. 2151.414(B)(1)(b) applied because appellant had abandoned the child, and (2) 2151.414(B)(1)(d) applied because the child had been in appellee's temporary custody for more than 12 months of a consecutive 22-month period. The statute required the court to find only one of the R.C. 2151.414(B)(1)(a) to (e) factors. Thus, assuming, arguendo, that the evidence fails to support the trial court's abandonment finding, the court's alternative finding under R.C. 2151.414(B)(1)(d) satisfies the requirement that the court find the existence of any of the R.C. 2151.414(B)(1)(a) to (e) factors. Consequently, any error that

the trial court made by determining that the child was abandoned was harmless. *See In re P.G.*, 2025-Ohio-1521, ¶ 42 (4th Dist.).

{¶33} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

R.C. 2151.414(D)

{¶34} In his second assignment of error, appellant contends that the record does not contain sufficient evidence to support the trial court's best interest finding and that its finding is against the manifest weight of the evidence.

{¶35} R.C. 2151.414(D) lists the factors that a trial court considers when determining whether permanent custody will serve a child's best interest. The statute directs a trial court to consider "all relevant factors," as well as specific factors, to determine whether a child's best interest will be served by granting a children services agency permanent custody. The listed factors include: (1) the child's interaction and interrelationship with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the child's wishes, as expressed directly by the child or through the child's guardian ad litem, with due regard for the child's maturity; (3) the child's custodial history; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody

to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.

**{¶36}** Courts that must determine whether a grant of permanent custody to a children services agency will promote a child's best interest must consider "all relevant [best interest] factors," as well as the "five enumerated statutory factors." *C.F.*, 2007-Ohio-1104, at ¶ 57, citing *In re Schaefer*, 2006-Ohio-5513, ¶ 56; *accord In re C.G.*, 2008-Ohio-3773, ¶ 28 (9th Dist.); *In re N.W.*, 2008-Ohio-297, ¶ 19 (10th Dist.). However, none of the best interest factors is entitled to "greater weight or heightened significance." *C.F.* at ¶ 57. Instead, the trial court considers the totality of the circumstances when making its best interest determination. *In re K.M.S.*, 2017-Ohio-142, ¶ 24 (3d Dist.); *In re A.C.*, 2014-Ohio-4918, ¶ 46 (9th Dist.). In general, "[a] child's best interest is served by placing the child in a permanent situation that fosters growth, stability, and security." *In re C.B.C.*, 2016-Ohio-916, ¶ 66 (4th Dist.), citing *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 324 (1991).

**{¶37}** In the case at bar, appellant argues that appellee did not present clear and convincing evidence that placing the child in its permanent custody is in the child's best interest. Appellant claims that R.C. 2151.414 requires a trial court to "find by clear and convincing evidence that it is in the best

interests of the child to be place[d] in the permanent custody of the Agency and that the child cannot be placed with either parent or kin within a reasonable period of time." Appellant contends that a relative remained available to provide the child with a legally secure permanent placement and that placing the child in appellee's permanent custody, therefore, was unnecessary. Appellant further contends that the court did not discuss the child's wishes.

{¶38} We do not agree with appellant that R.C. 2151.414 requires a trial court to "find by clear and convincing evidence that it is in the best interests of the child to be place[d] in the permanent custody of the Agency and that the child cannot be placed with either parent or kin within a reasonable period of time." R.C. 2151.414(B)(1)(a) states that one of the circumstances that may support placing a child in an agency's permanent custody is that "the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." This provision does not mention "kin" or relatives, as appellant suggests.

{¶39} Moreover, as we noted above, the trial court determined that R.C. 2151.414(B)(1)(d) applied. Thus, R.C. 2151.414(B)(1)(a), by its terms, was inapplicable. *See In re N.S.N.*, 2015-Ohio-2486, ¶ 52 (4th Dist.) ("under the plain language of R.C. 2151.414(B)(1)(d), when a child has been in a

children services agency's temporary custody for twelve or more months of a consecutive twenty-two-month period, a trial court need not find that the child cannot or should not be placed with either parent within a reasonable time"); *accord In re C.W.*, 2004-Ohio-6411, ¶ 21 (under "the '12 of 22' provision to R.C. 2151.414, an agency need no longer prove that a child cannot be returned to the parents within a reasonable time or should not be returned to the parents, so long as the child has been in the temporary custody of an agency for at least 12 months").

**{¶40}** We also observe that a trial court that is evaluating a child's best interest need not determine that no suitable person is available for placement. *See Schaefer*, 2006-Ohio-5513, at ¶ 64. Moreover, courts are not required to favor relative placement if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody. *Id.*; *accord In re T.G.*, 2015-Ohio-5330, ¶ 24 (4th Dist.); *see In re V.C.*, 2015-Ohio-4991, ¶ 61 (8th Dist.) (stating that relative's positive relationship with child and willingness to provide an appropriate home did not trump child's best interest). Additionally, "[r]elatives seeking the placement of the child are not afforded the same presumptive rights that a natural parent receives as a matter of law, and the willingness of a relative to care for the child does not alter the statutory factors to be considered in granting

permanent custody." *In re Keaton*, 2004-Ohio-6210, ¶ 61 (4th Dist.). We observe that "[i]f permanent custody is in the child's best interest, legal custody or placement with [a parent or other relative] necessarily is not." *K.M.*, 2014-Ohio-4268, at ¶ 9 (9th Dist.).

{¶41} Furthermore, we recognize that, "[a]lthough family unity and 'blood relationship'" may be vital factors to consider, "neither is controlling." *In re J.B.*, 2013-Ohio-1703, ¶ 31 (8th Dist.). Indeed, "neglected and dependent children are entitled to stable, secure, nurturing and permanent homes in the near term . . . and their best interest is the pivotal factor in permanency case." *In re T.S.*, 2009-Ohio-5496, ¶ 35 (8th Dist.). Thus, while biological relationships may constitute important considerations, they do not control when ascertaining a child's best interest. *In re J.B.*, 2013-Ohio-1706, ¶ 111 (8th Dist.). Consequently, "courts are not required to favor a relative if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody." *Keaton*, 2004-Ohio-6210, at ¶ 61 (4th Dist.). We therefore do not agree with appellant that the trial court should have placed the child with a relative rather than placing the child in appellee's permanent custody.

{¶42} We also disagree with appellant that the trial court failed to consider the child's wishes. The court recognized

that the GAL recommended that the court place the child in appellee's permanent custody. R.C. 2151.414(D)(1)(b) allows the court to consider "[t]he wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child." This provision "unambiguously gives the trial court the choice of considering the child's wishes directly from the child or through the guardian ad litem." *C.F.*, 2007-Ohio-1104, at ¶ 55; *accord In re S.M.*, 2014-Ohio-2961, ¶ 32 (4th Dist.) (recognizing that R.C. 2151.414 permits juvenile courts to consider a child's wishes as the child directly expresses or through the GAL). Additionally, the record indicates that, at the time of the permanent custody hearing, the child was less than four years of age. Thus, the trial court may have appropriately considered that the child lacked sufficient maturity to directly express her wishes.

{¶43} Moreover, the record otherwise contains ample, competent and credible evidence that placing the child in appellee's permanent custody is in the child's best interest. Consequently, appellant has not shown that the trial court's judgment placing the child in appellee's permanent custody is against the manifest weight of the evidence.

{¶44} Our conclusion that the trial court's judgment is not against the manifest weight of the evidence also disposes of appellant's assertion that the record does not contain

sufficient evidence to support the trial court's judgment. *See In re C.N.*, 2015-Ohio-2546, ¶ 9 (10th Dist.) ("though sufficiency and manifest weight are different legal concepts, a finding that a judgment is supported by the manifest weight of the evidence necessarily includes a finding that sufficient evidence supports the judgment"); *see also State v. McKinney*, 2024-Ohio-4642, ¶ 63 (4th Dist.) ("a determination that the weight of the evidence supports a conviction also is dispositive of an insufficient-evidence claim"). We therefore disagree with appellant's argument that the record fails to contain sufficient evidence to support the trial court's best interest determination.

{¶45} Accordingly, based upon the foregoing reasons, we overrule appellant's two assignments of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment & Opinion


For the Court



BY:_____
            Peter B. Abele, Judge




NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.