[Cite as *In re T.S.*, 2021-Ohio-2171.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| In the Matter of: | : | Case Nos. 21CA1130 |
| | | 21CA1131 |
| T.S., Jr. | : | 21CA1132 |
| C.H. | | 21CA1134 |
| D.H. | : | |
| | | DECISION AND |
| Dependent Children. | : | JUDGMENT ENTRY |

_____
APPEARANCES:

Brian T. Goldberg, Cincinnati, Ohio, for appellant M.H.

Christina M. Strasel, Kroener Hale Law Firm, Batavia, Ohio, for appellant T.S., Sr.

C. David Kelley, Adams County Prosecutor, and Anthony J. Hurst, Assistant Adams County Prosecutor, West Union, Ohio, for appellee.
_____
Hess, J.

{¶1}   M.H. appeals from judgments of the Adams County Court of Common Pleas, Juvenile Division entered in three cases granting permanent custody of her sons, T.S., Jr., C.H., and D.H. to Adams County Children's Services ("ACCS").  T.S., Sr. appeals from the permanent custody judgment with respect to his son, T.S., Jr.  We sua sponte consolidated the appeals for purposes of decision.

{¶2}   The trial court properly granted permanent custody under R.C. 2151.414(B)(1)(d), which required a determination by clear and convincing evidence that the children had been in the temporary custody of ACCS for 12 or more months of a consecutive 22-month period and that it is in the best interest of the children to grant ACCS permanent custody.  There is no dispute that the children were in the temporary custody of ACCS for the requisite amount of time.  M.H. and T.S., Sr. challenge whether

the best interest requirement was satisfied, but ACCS presented competent and credible evidence upon which the trial court reasonably could have formed a firm belief that a grant of permanent custody to ACCS was in the best interest of the children. T.S., Sr. also challenges the trial court's finding under R.C. 2151.414(B)(2) that T.S., Jr. could not be placed with M.H. within a reasonable time; however, that finding was unnecessary because R.C. 2151.414(B)(2) does not apply in this case. Accordingly, we affirm the trial court's judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶3} On January 8, 2019, ACCS filed complaints in three cases alleging that T.S., Jr. (then age 9), D.H. (then age 11), and C.H. (then age 12) were dependent children. M.H. ("Mother") is the mother of the children. The children have different fathers. The complaints alleged that the children had missed a substantial amount of school due to homelessness and that Mother was incarcerated due to an outstanding warrant for contributing to the unruliness of a minor for not sending the children to school. The complaints alleged the children did not have a guardian or custodian to care for them and requested a disposition of temporary custody to ACCS. ACCS also sought ex parte temporary custody orders, which the trial court granted and later continued after an emergency hearing.

{¶4} Mother appeared for the adjudicatory hearing but none of the fathers did. Mother admitted that the children were dependent, and a magistrate adjudicated them as such, continued temporary custody with ACCS, and ordered ACCS to "create and implement an acceptable case plan with a goal of reunification." The trial court adopted the magistrate's decision. Mother and T.S., Sr. appeared for the dispositional hearing

and consented to a disposition of temporary custody to ACCS. A magistrate ordered that disposition, and the trial court adopted that decision. Following semi-annual review hearings in September 2019 and March 2020, the children remained in the temporary custody of ACCS.

{¶5} In April 2020, ACCS moved for permanent custody pursuant to R.C. 2151.413(A), R.C. 2151.413(B),[1] R.C. 2151.414(B)(1)(b), and R.C. 2151.414(B)(1)(d). The permanent custody hearing took place on July 1, 2020, and January 8, 2021. Makayla Miller, an ongoing case worker for ACCS, testified that in December 2018, ACCS received a report about the children. Due to homelessness issues, ACCS did not locate Mother until she was arrested on an outstanding warrant for contributing to the unruliness of a minor for failing to send the children to school. At the time of her arrest, Mother tested positive for methamphetamines, amphetamines, and oxycodone. On January 8, 2019, ACCS filed dependency complaints and obtained temporary custody of the children, and on January 28, 2019, it implemented Mother's case plan.

{¶6} Mother's objectives were to complete parenting classes, complete a mental health assessment, complete a drug and alcohol assessment and treatment, obtain and maintain stable income and housing, and visit the children. Miller testified that as of the first day of the permanent custody hearing, Mother had not started parenting classes. She had completed a mental health assessment; no mental health treatment was recommended. Mother had completed a drug and alcohol assessment but not treatment. She had begun treatment at BrightView in May 2020 (her third

---

[1] ACCS's citation to R.C. 2151.413(B) appears to be a typographical error as that provision applies to orphaned children. ACCS may have intended to cite R.C. 2151.413(D)(1) as that section generally requires a public children services agency to move for permanent custody when a child has been in the agency's temporary custody for twelve or more months of a consecutive twenty-two-month period.

attempt at treatment since November 2019) and had an estimated completion date in September 2020. From January 2019 to February 2020, Mother had ten positive drug tests and one presumptive positive test from a time she claimed that she could not urinate. After that, she had eight negative tests. Mother claimed she had been working at a fence company since August 2019, but ACCS's attempt to verify the employment was unsuccessful. Mother had moved five times since ACCS initiated the cases and was living with her former boyfriend/claimed boss in an RV which was not suitable for the children. She told Miller that she would be able to move into a suitable rental property in a few days. Mother had attended only 23 of 56 scheduled visits with the children but talked to them on the phone weekly.

{¶7} Miller testified that between the first and last day of the permanent custody hearing, Mother completed parenting classes and consistently visited the children. The visits went "very well," and the children were bonded with Mother. Mother did not have any more positive drug tests but did not complete drug and alcohol treatment; BrightView extended her treatment because she missed several counseling sessions. Mother still did not have stable housing. In August 2020 she moved in with some friends, and in October 2020, she returned to the RV that was not suitable for the children. On December 23, 2020, she applied to rent a trailer and requested help with the deposit and rent. ACCS pledged $1200. Because the trailer needed repairs, Mother did not move in before the last day of the permanent custody hearing, but the trailer was supposed to be ready that day. Miller had not seen the trailer and did not know how long Mother would need to prepare it for the children or if she could maintain it without ACCS's financial assistance. Miller testified that ACCS never received

verification of Mother's employment with the fence company but did verify that since November 29, 2020, she had been working 24-40 hours a week at Kroger on the third shift.  Mother suggested her new boyfriend or sister could watch the children while she worked.  However, her boyfriend had felony convictions, prior substance abuse issues, and was unfamiliar to the children, and her sister had an open children's services case.

{¶8}   Miller testified that ACCS added T.S., Sr. to the case plan in May 2019, and his objectives were to complete parenting classes, complete a drug and alcohol assessment and treatment, obtain and maintain stable housing and income, and visit the children.  He was at the STAR Community Justice Center from August 19, 2019, to December 18, 2019.  While at STAR, he completed parenting classes and participated in drug and alcohol treatment. However, he did not follow up with aftercare through probation after his release from STAR, and his probation was revoked. He was incarcerated on June 18, 2020, and his earliest possible release date was in May 2021. As a result, he did not have stable housing or income.  T.S., Sr. sent T.S., Jr. three letters while at STAR and had three face-to-face visits with him between March and December 2019.  They seemed to get along well, but Miller was not aware of any contact after the June 2020 incarceration.  T.S., Sr. has two other children who are T.S., Jr.'s half-siblings.  ACCS has permanent custody of them—one by permanent surrender and one through a permanent custody proceeding.  Miller testified that the fathers of C.H. and D.H. had no contact with ACCS or their sons during the pendency of the cases.

{¶9}   In addition, Miller testified that when ACCS initially got temporary custody, it placed the children in the same foster home.  D.H. remained in that home, his foster

parents were approved to adopt, and they were interested in adopting him.  In March 2019, ACCS moved C.H. to the Wilson Children's Home due to behavior issues.  In June 2019, ACCS placed him in his current foster home, and his foster parents had been approved to adopt and were interested in adopting him.  In October 2019, ACCS moved T.S., Jr. to a different foster home due to behavior issues, and his foster parents had been approved to adopt and were considering adopting him.  Miller testified that the children visit each other once a week at ACCS, and two of the children have had visits outside of ACCS because their foster parents know each other.  Miller testified that the children want to continue their relationship, and that no relatives were interested in taking them.

{¶10} Dawn Grooms, a foster care and adoption specialist with ACCS, testified that each child had been placed in a suitable foster home with adoption approval and had a bond with his foster parents. She testified that the children were bonded with each other and Mother; they loved Mother, worried about her, and wanted her to "get her life together."  Grooms testified that if the children were adopted, they would be in separate homes and there would not be a legal requirement for continued contact among them.

{¶11} C. Nicholas Ring, the children's guardian ad litem, recommended that the court deny the permanent custody motion.  He testified that Mother and the children loved each other, that the children were "very bonded with each other," and that he was concerned a grant of permanent custody and adoptions would result in them being separated and unable to contact each other.  He believed the children could be reunified with Mother in a reasonable time.

{¶12} Mother testified on the last day of the permanent custody hearing and indicated that she hoped to move that day.  She was prepared to furnish her new home with assistance from others and pay a utility deposit.  Mother admitted she had not had a valid driver's license for over two years but had still been driving.  She had paid a reinstatement fee and planned to get an SR-22 (a certificate of insurance) "today after court" so she could complete the other requirements to get her license back. Mother testified that her work supervisor expressed a willingness to let her change shifts to be with the children, and if that did not happen, she would have to find a babysitter.  Mother claimed that in the past, she falsely tested positive for methamphetamines and amphetamines due to a prescription blood pressure medication, and she claimed to have had a prescription for oxycodone.  Mother wanted more time to try to reunify with the children, and the parties stipulated that the children wished to be reunited with her.

{¶13} T.S., Sr. testified that he was serving a sentence at the London Correctional Institution.  He testified that after his release from STAR, he made some effort to have contact with T.S., Jr.  Their last in-person visit was around the end of 2019.  T.S., Sr. asked the court to keep the children together or let them stay in contact with each other.

{¶14} The trial court granted ACCS's motion for permanent custody.  Citing R.C. 2151.414(B)(1)(b), the court found the parents had abandoned the children, and citing R.C. 2151.414(B)(1)(d), the court found the children had been in the temporary custody of ACCS for 12 or more months of a consecutive 22-month period.  The court also found that it was in the children's best interest to grant ACCS permanent custody and stated:

> In determining the best interest of the children, the Court has considered the factors enumerated in O.R.C. 2151.414(D) and (E) and specifically the custodial placement of the children and the interaction and interrelationship of the children and the parents and the children and the foster caregivers of the children. Further, the Court has considered the children's need for a legally secure permanent placement and finds that such placement cannot be achieved without a grant of permanent custody to the Agency.

In addition, citing R.C. 2151.414(B)(2), the court found that "the children cannot and should not be placed with the parents within a reasonable amount of time."

## II. ASSIGNMENTS OF ERROR

{¶15} Mother presents one assignment of error in her appeals: "The trial court abused its discretion when it granted permanent custody of the children to [ACCS]."

{¶16} T.S., Sr. presents two assignments of error:

I. The trial court erred in finding by clear and convincing evidence that the child T.S., Jr. could not be safely placed with either parent within a reasonable amount of time pursuant to R.C. 2151.414(A)(2).

II. The trial court erred in finding that permanent custody is in the best interest of T.S., Jr.

For ease of discussion, we will address the assignments of error out of order.

## III. LAW AND ANALYSIS

### A. Standard of Review

{¶17} "A reviewing court will not reverse a trial court's judgment in a permanent custody case unless it is against the manifest weight of the evidence." *In re C.S.*, 4th Dist. Pike No. 19CA899, 2019-Ohio-5109, ¶ 21. This court has explained

> "To determine whether a permanent custody decision is against the manifest weight of the evidence, an appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving evidentiary conflicts, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." [*In re*

*T.J.*, 4th Dist. Highland Nos. 15CA15 and 15CA16, 2016-Ohio-163,] ¶ 25, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. In reviewing evidence under this standard, we defer to the trial court's determinations of matters of credibility, which are crucial in these cases, where demeanor and attitude are not reflected well by the written record. *Eastley* at ¶ 21; *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

In a permanent custody case the dispositive issue on appeal is "whether the [juvenile] court's findings * * * were supported by clear and convincing evidence." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 43; R.C. 2151.414(B)(1). "Clear and convincing evidence" is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus; *State ex rel. Pietrangelo v. Avon Lake*, 149 Ohio St.3d 273, 2016-Ohio-5725, 74 N.E.3d 419, ¶ 14. "[I]f the children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's decision is not against the manifest weight of the evidence." *In re R.M.*, 2013-Ohio-3588, 997 N.E.2d 169, ¶ 55 (4th Dist.).

*Id.* at ¶ 21-22.

## B. R.C. 2151.414(B)(1)

**{¶18}** The trial court indicated that ACCS was entitled to permanent custody under both R.C. 2151.414(B)(1)(b) and R.C. 2151.414(B)(1)(d), which state:

(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

* * *

(b) The child is abandoned.

* * *

(d) The child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period * * *.

{¶19} Mother asserts she did not abandon the children, but she and T.S., Sr. do not dispute that the children were in the temporary custody of ACCS for 12 or more months of a consecutive 22-month period. So regardless of whether R.C. 2151.414(B)(1)(b) applies, we must affirm the permanent custody award under R.C. 2151.414(B)(1)(d) unless the trial court's best interest determination is against the manifest weight of the evidence.

{¶20} Mother challenges the best interest determination in her sole assignment of error in each of her appeals, and T.S., Sr. challenges it in his second assignment of error. Mother asserts that there is evidence that she and the children have appropriate interactions, that the children love and worry about her, and that the children wish to live with her. Mother also asserts that there is evidence the children have a close relationship with each other, that it is in their best interest to stay together, and that the only realistic way that can happen is if they are returned to her. Mother admits she "got off to a slow start working her case plan" but asserts that she made "a drastic improvement" after the first day of the permanent custody hearing. She asserts that by the final hearing date, she had tested negative for drugs for almost a year, was in treatment at BrightView, had stable employment, had completed parenting classes, was regularly visiting the children, and was prepared to move into and furnish a home. Mother highlights the guardian ad litem's opinion that reunification efforts should continue to keep the children together. T.S., Sr. asserts that T.S., Jr. "has a close and bonded relationship with his family, and in particular Mother and his siblings" and that

based on the guardian ad litem's testimony, it is in the best interest of T.S., Jr. for Mother to have additional time to reunify with the children to ensure ongoing sibling contact.

{¶21} R.C. 2151.414(D)(1) governs the best interest determination and provides:

In determining the best interest of a child * * * the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

No one factor has "greater weight or heightened significance." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 57. "Instead, the trial court considers the totality of the circumstances when making its best interest determination." *In re Z.M.*, 4th Dist. Scioto No. 18CA3856, 2019-Ohio-2564, ¶ 24.

{¶22} In its judgment entries granting permanent custody, the trial court indicated it had considered the statutory factors. The court did not engage in a specific analysis of each factor, but the parties did not request findings of fact and conclusions of law. "Under these circumstances 'we ordinarily presume that the trial court applied

the law correctly and affirm if some evidence in the record supports the court's judgment.' " *In re M.R.J.*, 4th Dist. Lawrence No. 18CA17, 2019-Ohio-2755, ¶ 35, quoting *In re E.S.*, 4th Dist. Pickaway Nos. 17CA16 & 17CA17, 2018-Ohio-1902, ¶ 30.

### 1. Interactions and Interrelationships of the Children

**{¶23}** There is no evidence that C.H. or D.H. have a bond with their fathers. There is some evidence T.S., Jr. has a bond with T.S., Sr. but there is no evidence of any contact between them after December 2019. There is evidence that the children are bonded with Mother and each other. However, there is also evidence each child has a bond with his foster parents and that their foster parents are interested in adoption. If that occurs, it is possible the children would not have continued contact with each other.

### 2. Wishes of the Children

**{¶24}** The children wish to be reunited with Mother.

### 3. Custodial History

**{¶25}** Before ACCS instituted these actions, the children were in the custody of Mother. Since ACCS instituted these actions in January 2019, the children have been in the temporary custody of ACCS. Therefore, at the time of the permanent custody hearing, the children had been in the temporary custody of ACCS for 12 or more months of a consecutive 22-month period.

### 4. Legally Secure Permanent Placement

**{¶26}** The Ohio Revised Code does not define the phrase "legally secure permanent placement"; however, "this court and others have generally interpreted the phrase to mean a safe, stable, consistent environment where a child's needs will be

met." *In re M.B.*, 4th Dist. Highland No. 15CA19, 2016-Ohio-793, ¶ 56. "A legally secure permanent placement is more than a house with four walls. Rather, it generally encompasses a stable environment where a child will live in safety with one or more dependable adults who will provide for the child's needs." *Id.*

**{¶27}** Competent, credible evidence supports the trial court's finding that the children's need for a legally secure permanent placement cannot be achieved without a grant of permanent custody to ACCS. During the first 17 months Mother had a case plan, she made little progress on it. She did make progress on her case plan during the next six months. However, by the end of the permanent custody hearing, which was two years after the children's removal, she had not completed drug and alcohol treatment, had verifiable employment for less than six weeks (which she drove to without a valid driver's license), and had never obtained and maintained stable housing.

**{¶28}** The trial court could have determined that giving the children the permanency and stability they need, rather than continuing to hold them in custodial limbo while Mother attempts to achieve full compliance with her case plan, would better serve the best interest of the children. "[T]he permanent custody statutes do not contemplate leaving children in custodial limbo for an extended period of time while a parent attempts to establish that the parent can provide the child with a legally secure permanent placement." *In re Z.M.*, 4th Dist. Scioto No. 18CA3856, 2019-Ohio-2564, ¶ 34. "[K]eeping children in limbo is not in their best interests." *Id.*

### 5.  Factors in R.C. 2151.414(E)(7) to (E)(11)

**{¶29}** R.C. 2151.414(E)(10) and (E)(11) are relevant in this case. R.C. 2151.414(E)(10) applies when "[t]he parent has abandoned the child." R.C.

2151.011(C) provides that for purposes of R.C. Chapter 2151, "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days."  R.C. 2151.011(C). There is evidence that this presumption of abandonment applies with respect to the fathers of C.H. and D.H., who had no contact with their sons between January 2019 and January 2021, and with respect to T.S., Sr. due to his lack of contact with his son after December 2019.  The presumption does not appear to apply with respect to Mother. Although Miller testified that Mother did not consistently visit the children between January 2019 and July 2020, Miller did not testify to the amount of time between visits, and she testified that Mother talked to the children on the phone weekly.

{¶30} R.C. 2151.414(E)(11) applies when "[t]he parent has had parental rights involuntarily terminated with respect to a sibling of the child * * *, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child."  There is evidence that T.S., Sr. had his parental rights involuntarily terminated with respect to one of T.S., Jr.'s half-siblings and that T.S., Sr. cannot provide a legally secure permanent placement and adequate care for the health, welfare, and safety of T.S., Jr.

### 6.  Totality of the Circumstances

{¶31} Based on the foregoing, we conclude that the trial court's best interest finding was not against the manifest weight of the evidence. ACCS presented competent and credible evidence upon which the trial court reasonably could have

formed a firm belief that a grant of permanent custody to ACCS was in the best interest of the children. We conclude that the trial court properly granted ACCS permanent custody of the children under R.C. 2151.414(B)(1)(d), and we overrule Mother's sole assignment of error in her appeals and T.S., Sr.'s second assignment of error.

## C. R.C. 2151.414(B)(2)

**{¶32}** In his first assignment of error, T.S., Sr. contends the trial court erred when it found T.S., Jr. could not be placed with either parent within a reasonable time pursuant to "R.C. 2151.414(A)(2)." T.S., Sr. asserts that Mother "made significant progress towards her case plan goals," the guardian ad litem testified the children could be reunified with her within a reasonable time, and reunification would "maintain T.S., Jr.'s close and bonded relationship with his parents and siblings."

**{¶33}** T.S., Sr.'s citation to R.C. 2151.414(A)(2) appears to be a typographical error. R.C. 2151.414(A)(2) does not address the topic of placement with the parents within a reasonable time. Moreover, the trial court cited R.C. 2151.414(B)(2) when it found that "the children cannot and should not be placed with the parents within a reasonable amount of time."

**{¶34}** R.C. 2151.414(B)(2) states:

*With respect to a motion made pursuant to division (D)(2) of section 2151.413 of the Revised Code,* the court shall grant permanent custody of the child to the movant if the court determines in accordance with division (E) of this section that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of this section that permanent custody is in the child's best interest.

(Emphasis added.)

**{¶35}** R.C. 2151.413(D)(2) states:

Except as provided in division (D)(3) of this section, *if a court makes a determination pursuant to division (A)(2) of section 2151.419 of the Revised Code,* the public children services agency * * * required to develop the permanency plan for the child under division (K) of section 2151.417 of the Revised Code shall file a motion in the court that made the determination requesting permanent custody of the child.

(Emphasis added.)

{¶36} R.C. 2151.419(A)(2) sets forth circumstances in which a court "shall make a determination that the agency is not required to make reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the child's home, and return the child to the child's home."

{¶37} It was not necessary for the trial court to consider R.C. 2151.414(B)(2) or make a determination whether the children could not be placed with a parent within a reasonable time or should not be placed with their parents. The trial court did not make a determination under R.C. 2151.419(A)(2) that reasonable efforts were not required, ACCS did not file its motion for permanent custody pursuant to R.C. 2151.413(D)(2), and ACCS did not request permanent custody under R.C. 2151.414(B)(2). Moreover, we have already determined that the trial court properly granted permanent custody under R.C. 2151.414(B)(1)(d). "It is well-established that under the plain language of R.C. 2151.414(B)(1)(d), when a child has been in a children services agency's temporary custody for twelve or more months of a consecutive twenty-two-month period, a trial court need not find that the child cannot or should not be placed with either parent within a reasonable time." *In re N.S.N.,* 4th Dist. Washington Nos. 15CA6, 15CA7, 15CA8, 15CA9, 2015-Ohio-2486, ¶ 52. Therefore, any error the trial court made in finding T.S., Jr. could not be placed with Mother within a reasonable time was harmless.

**{¶38}** Even if such a finding had been required, T.S., Sr.'s argument does not consider that pursuant to R.C. 2151.414(E), if a trial court determines by clear and convincing evidence that one or more statutorily enumerated factors exist as to each of the child's parents, it must find the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. The factors include:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

> * * *

> (10) The parent has abandoned the child.

R.C. 2151.414(E). Although the trial court did not specifically cite these provisions, it found that "the parents have failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the children's home and that the parents have abandoned the child[ren]." T.S., Sr.'s argument does not address these findings.

**{¶39}** For the foregoing reasons, we overrule T.S., Sr.'s first assignment of error.

## IV. CONCLUSION

**{¶40}** Having overruled the assignments of error, we affirm the trial court's judgments.

JUDGMENTS AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENTS ARE AFFIRMED and that appellants shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Wilkin, J.:  Concur in Judgment and Opinion.


For the Court



BY: _____
     Michael D. Hess, Judge




**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**