[Cite as *In re P.G.*, 2025-Ohio-1521.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
MEIGS COUNTY

IN THE MATTER OF: :
:
P.G. and K.G., : Case Nos. 24CA10
: 24CA11
Adjudicated Dependent :
Children. :
: DECISION AND JUDGMENT
: ENTRY
:

_____

**APPEARANCES**:

Robert W. Bright, Middleport, Ohio, for Appellant.

Raberta A. Hill, Meigs County Assistant Prosecuting Attorney, Middleport, Ohio, for Appellee.

_____

Smith, P.J.

{¶1} Appellant, D.R., appeals the trial court's judgment that placed her two children, seven-year-old P.G.[1] and 22-month-old K.G., in the permanent custody of Meigs County Children Services ("the agency"). In her sole assignment of error, Appellant argues that the trial court's judgment granting the agency permanent custody of the children is against the manifest weight of the evidence. Upon

_____

[1] We observe that the record contains inconsistent information regarding P.G.'s birthdate. The complaint states that the child was born on February 27, 2016, but the trial court's permanent custody decision states that the child was born on February 21, 2017. This opinion uses the date contained in the trial court's decision (although we note that the case plans filed in the case indicate that one of P.G.'s siblings, who is not involved in this appeal, was born on February 21, 2017, and that P.G. was born about a year earlier, on February 27, 2016).

review, we do not find any merit to Appellant's assignment of error.  Accordingly,

we overrule Appellant's assignment of error and affirm the trial court's judgment.

## FACTS

{¶2}  On April 24, 2023, the agency filed complaints that alleged that P.G.

was a dependent and neglected child and that R.G. was a dependent child.  The

complaints alleged the following.  On April 22, 2023, the agency received a report

that several children were outside the family's residence, and they were not

wearing any clothes.[2]  The report further stated that two adults located inside the

residence were screaming at each other.

{¶3}  Upon receiving the report, a caseworker reviewed the agency's files

and noted that the family had an active safety plan dated March 10, 2023.  This

safety plan indicated that Appellant and the children would stay at Appellant's

mother's home and that D.G., the father of P.G.'s five younger siblings,[3] would not

be around the children.

{¶4}  A caseworker went to Appellant's mother's home to investigate.

Upon arriving at the home, the caseworker spoke with the oldest child, P.G.  P.G.

stated that Appellant and D.G. had been fighting earlier in the day and that D.G.

---

[2] Appellant has a total of six children, and the agency filed complaints regarding all six children.  This appeal involves only the oldest child, P.G., and the youngest child, K.G.  The court placed the remaining children, who are not involved in this appeal, in a relative's legal custody.

[3] P.G.'s father, D.B., did not participate in the trial court proceedings, and the trial court found that he has not had any involvement in P.G.'s life.

broke Appellant's phone. P.G. indicated that someone had called law enforcement officers, so the family left the home and went to Appellant's mother's house. The agency subsequently sought and obtained emergency custody of the children.

{¶5} While the caseworker waited for placements for the children, P.G. began having "extreme stomach pains." The caseworker sent P.G. to the bathroom because she knew that P.G. had a serious medical condition that required daily enemas. When P.G. was in the bathroom, the caseworker noticed that P.G. had been wearing a pull-up diaper and that it had dried stool in it. The caseworker asked P.G. if she had been receiving enemas, and P.G. stated that she had not. P.G. stated that she did not recall when she last had an enema. P.G. continued to experience severe pains. During this time, the foster parent arrived, and the agency instructed the foster parent to take P.G. to the emergency room.

{¶6} At the emergency room, medical personnel discovered that P.G. had "a major blockage" and transferred her to Nationwide Children's Hospital in Columbus. She subsequently had surgery "to allow enemas to be performed through the stomach instead of the rectum."

{¶7} The complaint alleged that Appellant's failure to follow through with the children's medical care "has been a continuous and serious issue which [led] to

their initial removal on 5/30/22."[4]  The complaint further asserted that Appellant violated the safety plan.  The agency thus asked the court to place the children in its temporary custody.

{¶8}  On June 1, 2023, the trial court adjudicated the children dependent. The court also adjudicated P.G. a neglected child.  The court later entered a dispositional order that placed P.G. and K.G. in the agency's temporary custody.

{¶9}  On May 28, 2024, the agency filed a permanent custody motion.  The agency alleged that the children have been in its temporary custody for 12 or more months of a consecutive 22-month period.  The agency further asserted that the children cannot be placed with either parent or should not be placed with either parent.  The agency claimed that the parents failed continuously and repeatedly to substantially remedy the conditions that led to the children's removal and that the parents have demonstrated a lack of commitment to the children.  The agency additionally contended that placing the children in its permanent custody is in their best interest.

{¶10} On July 9, 2024, the trial court held a hearing to consider the agency's permanent motion.  Caseworker Courtney Russell testified as follows.  The agency decided to seek permanent custody because the children had been in its temporary

---

[4] The record transmitted on appeal includes some transcripts of the hearings held in the 2022 case.  However, the record does not include any other filings prior to the April 24, 2023 complaint.

custody for more than one year. The agency previously had enacted a safety plan for the family due to concerns of neglect and lack of medical attention. In April 2023, the agency received a report of domestic violence involving Appellant and D.G., and the court placed the children in the agency's temporary custody.

{¶11} The agency developed a case plan that required Appellant to (1) obtain a mental health assessment and follow any treatment recommendations, (2) address domestic violence issues, (3) attend the children's medical appointments, (4) attend in-person training to learn how to care for P.G., (5) visit the children, (6) complete a parenting program, (7) complete a budgeting course, and (8) obtain a safe, suitable, and stable living environment for the children.

{¶12} Appellant has completed some parts of the case plan. She attended a training session to learn how to care for P.G.'s condition, visited the children, and completed a mental health assessment. However, she did not attend all of the children's medical appointments. Between February 2024, and the date of the permanent custody hearing, Appellant had attended only one appointment.

{¶13} Appellant has been living with a boyfriend in Marietta for about four or five months, and she recently obtained a job working at a hotel. Russell agreed that Appellant had complied with "a number" of case plan requirements but stated that the agency remained concerned about Appellant's failure to consistently attend the children's medical appointments. Russell noted that Appellant also had missed

P.G.'s medical appointments in January and February 2023, before the agency had obtained temporary custody of the children.

{¶14} Appellant testified and explained that she did not attend the children's medical appointments due to conflicts with employment or transportation issues. She stated that if the court gave her more time, she would be able to arrange to attend future medical appointments.

{¶15} Appellant claimed that before the children entered the agency's temporary custody, she had given P.G. enemas each day at 6:00 p.m. She did not know why the enemas appeared to be ineffective such that P.G. required emergency medical care upon entering the agency's temporary custody.

{¶16} Appellant further indicated that she has been with her current boyfriend for about nine months and that she has lived in the same residence since October 2023.

{¶17} The children's GAL testified and stated that she does not have any concerns with the children's foster placements. The GAL recognized that Appellant has had a job since May, but the GAL did not believe that the job provided adequate income to support the children. The GAL also agreed that Appellant has been living with her boyfriend, but she stated that the boyfriend has several children living in his home. She thus is uncertain whether the home would be adequate for Appellant's children. The GAL agreed that Appellant had

complied with parts of the case plan, but she believed that Appellant's lack of consistency remained an issue.

{¶18} On July 17, 2024, the trial court granted the agency permanent custody of the children. The court found that the children had been in the agency's temporary custody from May 4, 2023, to July 9, 2024, and thus were in the agency's temporary custody for 12 or more months of a consecutive 22-month period. The court also determined that the children cannot be returned to Appellant's custody within a reasonable period of time or should not be returned to Appellant's custody. The court further concluded that placing the children in the agency's permanent custody is in their best interest.

{¶19} In reaching its decision, the court recounted the following facts. In May 2022, the agency filed complaints regarding P.G. and the four children who had been born at the time. At that time, the agency had concerns that D.G. was using drugs and shooting firearms toward neighbors. Additional concerns included domestic violence, D.G.'s criminal charges, a lack of electricity in the home, housing instability, and "danger and chaos around the children." The agency also expressed concerns that each child was "suffering from varying degrees of failure to thrive" and that their development was not age appropriate.

{¶20} In March 2023, the agency enacted a safety plan due to D.G.'s substance use and concerns regarding "domestic issues." The safety plan required

D.G. to submit to drug tests, to live separately from Appellant and the children, to "address his criminal warrants," and to avoid contact with Appellant and the children.

{¶21} In April 2023, the agency received additional reports regarding domestic issues between Appellant and D.G. An investigation revealed that Appellant and D.G. once again were living together. Furthermore, "some of the children were seen naked in the yard," and "K.G. was reportedly sleeping in a car seat inside the residence due to lack of proper bedding." Additionally, Appellant "missed a specialized appointment for P.G. in April of 2023," and "P.G. was found to have a major bowel blockage that required emergency surgery and hospitalization." Without medical intervention, P.G.'s condition "could have had deadly consequences."

{¶22} The court found that Appellant "complied with parts of the case plan" but pointed out that she missed multiple medical appointments for the children. The court also noted that in late 2023, Appellant moved to Marietta to live with a new boyfriend rather than choosing to remain in the local area where she could have developed a family network to help her, obtained employment, obtained stable and independent housing, obtained a valid driver's license, used reliable transportation, and lived near the visitation center.

{¶23} Agency caseworkers testified that although Appellant completed parts of her case plan, she did not prioritize being reunified with the children. The court observed that "P.G. has extreme health issues that require specialized training" and "a special care plan" each day. The court stated that P.G.'s appointments and daily care "cannot be missed or neglected" and observed that the agency feared that Appellant's pattern of missing previous medical appointments suggested that she would continue to miss future appointments.

{¶24} The court additionally noted that the children's GAL stated that placing the children in the agency's permanent custody is in their best interests.

{¶25} Based upon all of the foregoing, the court concluded that placing the children in the agency's permanent custody is in their best interest. Accordingly, the court granted the agency's permanent custody motions. This appeal followed.

## ASSIGNMENT OF ERROR

> THE JUVENILE COURT ERRED IN GRANTING
> PERMANENT AND LEGAL CUSTODY TO MEIGS
> COUNTY CHILDREN'S SERVICES AND IN
> TERMINATING THE PARENTAL RIGHTS OF MOTHER
> D.R.

{¶26} In her sole assignment of error, Appellant essentially asserts that the trial court's permanent custody judgment is against the manifest weight of the evidence. She contends that she "made substantial efforts to comply with the case plan" and "substantially remedied the conditions that cause the child[ren] to be

placed outside [her] home." Appellant further asserts that the evidence does not support the trial court's findings that she "only completed a few portions of the case plan" and did not show "enough for reunification in any reasonably foreseeable time in the future."

{¶27} Appellant agrees that the children had been in the agency's temporary custody for 12 or more months of a consecutive 22-month period. She asserts, however, that the trial court incorrectly relied upon R.C. 2151.414(B)(2) when deciding to grant the agency permanent custody. She contends that the evidence does not support a finding that the children cannot and should not be returned to her custody within a reasonable period of time. Appellant argues that "the only issue" she had not completely resolved was her failure to attend all of the children's medical appointments. She states that if the court had given her additional time, she would have been able to demonstrate her ability to attend the children's medical appointments. Appellant further summarily asserts that placing the children in the agency's permanent custody is not in their best interests.

Standard of Review

{¶28} A reviewing court generally will not disturb a trial court's permanent custody decision unless the decision is against the manifest weight of the evidence. *E.g., In re R.M.*, 2013-Ohio-3588, ¶ 53 (4th Dist.); *see In re Z.C.*, 2023-Ohio-4703, ¶ 1. When an appellate court reviews whether a trial court's permanent custody

decision is against the manifest weight of the evidence, the court " ' " 'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " ' " *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶29} In a permanent custody case, the ultimate question for a reviewing court is "whether the juvenile court's findings . . . were supported by clear and convincing evidence." *In re K.H.*, 2008-Ohio-4825, ¶ 43. In determining whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990). "Thus, if the children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's decision is not against the manifest weight of the evidence." *R.M.*, 2013-Ohio-3588, at ¶ 55 (4th Dist.).

{¶30} Once the reviewing court finishes its examination, the court may reverse the judgment only if it appears that the factfinder, when resolving the conflicts in evidence, " 'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " *Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20 Ohio App.3d at 175. A reviewing court should find a trial court's permanent custody decision against the manifest weight of the evidence only in the " 'exceptional case in which the evidence weighs heavily against the [decision].' " *Id.*, quoting *Martin* at 175; *see Black's Law Dictionary* (12th ed. 2024) (the phrase "manifest weight of the evidence" "denotes a deferential standard of review under which a verdict will be reversed or disregarded only if another outcome is obviously correct and the verdict is clearly unsupported by the evidence").

{¶31} Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419 (1997); *accord In re Christian,* 2004-Ohio-3146, ¶ 7 (4th Dist.). As the Ohio Supreme Court long ago explained:

> In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties and through independent investigation can not be conveyed to a reviewing court by printed record.

*Trickey v. Trickey*, 158 Ohio St. 9, 13 (1952).

Permanent Custody Framework

{¶32} R.C. 2151.414(B)(1) specifies that a trial court may grant a children services agency permanent custody of a child if the court finds, by clear and convincing evidence, that (1) the child's best interest would be served by the award of permanent custody, and (2) any of the following conditions applies:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

> (b) The child is abandoned.

> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

R.C. 2151.414(B)(1)(d)

{¶33} In the case at bar, the trial court found, pursuant to 2151.414(B)(1)(d), that the children had been in the agency's temporary custody for 12 or more months of a consecutive 22-month period. Appellant does not dispute this finding and agrees that this "requirement was met." Because Appellant does not dispute the trial court's R.C. 2151.414(B)(1)(d) finding and explicitly admits that the children had been in the agency's temporary custody for 12 or more months out of a consecutive 22-month period, we do not address this factor.

{¶34} We hasten to add, however, that our review of the record suggests that the trial court may not have correctly calculated the length of time that the children had been in the agency's temporary custody. R.C. 2151.414(B)(1) instructs courts that are reviewing whether a child has been in an agency's temporary custody for 12 or more months of a consecutive 22-month period to consider a child "to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to [R.C. 2151.28] or the date that is sixty days after the removal of the child from home." And "[a]n agency cannot seek permanent custody under R.C. 2151.414(B)(1)(d) unless the time

requirements are completed" before the agency files its permanent custody motion. *In re N.M.P.*, 2020-Ohio-1458, ¶ 17, citing *In re C.W.,* 2004-Ohio-6411, syllabus; *see also* R.C. 2151.413(D)(1) (unless certain exceptions exist, requiring an agency to file a permanent custody motion if a child has been in its temporary custody for 12 or more months of a consecutive 22-month period, and stating that "a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is 60 days after the removal of the child from home").

{¶35} In the case before us, the agency filed its permanent custody motion on May 28, 2024, which was a little more than 13 months after the date that the agency filed its complaint and the children initially were removed from the home. But R.C. 2151.414(B)(1) does not state that a child is considered to enter the agency's temporary custody on the date that the agency files an abuse, neglect, or dependency complaint or on the date of the child's initial removal from the home. Instead, according to R.C. 2151.414(B)(1), a child is considered to have entered the agency's "temporary custody" on the earlier of the adjudication date or the date that is 60 days after the child's removal from the home.

{¶36} Here, the trial court adjudicated the children on June 1, 2023, and on April 22, 2023, the children first were removed from the home. Sixty days after the children's removal would have been June 21, 2023. The earlier date—the date

of adjudication, June 1, 2023—controls for purposes of determining the date that the children entered the agency's "temporary custody." *See* R.C. 2151.414(B)(1). Thus, the evidence in the record indicates that when the agency filed its May 28, 2024 permanent custody motion, the children had not been in the agency's statutorily defined "temporary custody" for 12 or more months of a 22-month period. Rather, the children had been in the agency's "temporary custody" for 11 months and 28 days.[5]

{¶37} Although we have sua sponte recognized a miscalculation of the 12-month period as error in a previous case, *see In re R.R.*, 2024-Ohio-5300 (4th Dist.), in the case at bar, the circumstances do not suggest that we should sua sponte recognize any error that the trial court may have committed when calculating the 12-month period. The evidence indicates that the agency filed its permanent custody motion a few days before it had statutorily defined "temporary custody" of the children for a full 12 months. Thus, any miscalculation in the 12-month period is not significant enough to justify this court recognizing an error that the parties have not raised. *See generally State v. Peagler*, 76 Ohio St.3d 496, 499 (1996) (stating that appellate courts have "discretion in deciding to address an issue not briefed"); *State v. Greer,* 39 Ohio St.3d 236, 244 (1988), citing *State v.*

---

[5] Some evidence exists that P.G. previously spent time in the agency's temporary custody, but the record does not include the specific dates that P.G. spent in the agency's temporary custody.

*Rogers,* 32 Ohio St.3d 70 (1987), and *State v. Zuern,* 32 Ohio St.3d 56 (1987)

(appellate courts "retain power to sua sponte consider particular errors under

exceptional circumstances . . . under [the] plain error standard of analysis").

However, we wish to caution that, in future cases, sua sponte recognizing this type

of error may be warranted.  Thus, when filing permanent custody motions based

upon R.C. 2151.414(B)(1)(d), children services agencies should take care to ensure

that they are complying with the statutory directives when calculating the 12-

month period and that the evidence in the record supports a finding that the child

has been in the agency's temporary custody for 12 or more months of a

consecutive 22-month period.

R.C. 2151.414(B)(2)

{¶38}  Appellant additionally suggests that the trial court incorrectly relied

on R.C. 2151.414(B)(2) when deciding to grant the agency permanent custody,

because it found that the children could not be returned to Appellant within a

reasonable period of time or should not be returned to Appellant.  Contrary to

Appellant's belief, the record does not indicate that the trial court relied upon R.C.

2151.414(B)(2) when deciding to grant the agency permanent custody of the

children.

{¶39}  R.C. 2151.414(B)(2) provides as follows:

> With respect to a motion made pursuant to division (D)(2) of
> section 2151.413 of the Revised Code, the court shall grant

permanent custody of the child to the movant if the court determines in accordance with division (E) of this section that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of this section that permanent custody is in the child's best interest.

By its terms, R.C. 2151.414(B)(2) applies if the agency files a permanent custody motion in accordance with R.C. 2151.413(D)(2). R.C. 2151.413(D)(2) requires an agency to file a permanent custody motion if the court determines, under R.C. 2151.419(A)(2), that the agency need not use reasonable efforts "to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the child's home, and return the child to the child's home."

{¶40} Here, nothing in the record indicates that the agency filed its permanent custody motion in accordance with R.C. 2151.413(D)(2), and nothing shows that the court determined, under R.C. 2151.419(A)(2), that the agency need not use reasonable efforts. Moreover, the trial court did not refer to R.C. 2151.414(B)(2) in its decision. Thus, Appellant's assertion that the trial court incorrectly relied upon R.C. 2151.414(B)(2) when concluding that the children cannot be placed with Appellant within a reasonable time or should not be placed with her is without merit.

{¶41} The trial court's finding instead appears to be based upon R.C. 2151.414(B)(1)(a), which allows a court to grant an agency permanent custody of a child if (1) doing so is in the child's best interest, (2) the child "is not abandoned or

orphaned" or, as relevant here, "has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period," and (3) "the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents."  R.C. 2151.414(B)(1)(a) thus applies if a child has not been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period.

{¶42}  In the case at bar, as we noted above, the trial court found—and Appellant does not dispute—that the children had been in the agency's temporary custody for 12 or more months of a consecutive 22-month period.  R.C. 2151.414(B)(1)(a) therefore does not apply, and the trial court's finding was superfluous.  *See In re C.W.*, 2004-Ohio-6411, ¶ 21; *see also In re N.S.N.*, 2015-Ohio-2486, ¶ 52 (4th Dist.) ("under the plain language of R.C. 2151.414(B)(1)(d), when a child has been in a children services agency's temporary custody for twelve or more months of a consecutive twenty-two-month period, a trial court need not find that the child cannot or should not be placed with either parent within a reasonable time").  Therefore, any error the trial court made by determining that the children could not be placed with Appellant within a reasonable time or should

not be placed with her was harmless.  *See In re T.S.*, 2021-Ohio-2171, ¶ 37 (4th

Dist.).

{¶43}  To the extent that the trial court erred by determining that the

children had been in the agency's temporary custody for 12 or more months of a

consecutive 22-month period, its finding that the children could not be placed with

Appellant within a reasonable time or should not be placed with her is not against

the manifest weight of the evidence.  Although the trial court did not cite which

R.C. 2151.414(E) factors led it to conclude that the children could not be placed

with Appellant within a reasonable time or should not be placed with her, we

observe that the agency's motion asserted that R.C. 2151.414(E)(1) and (4)

applied.  Those provisions require a trial court to find that a child cannot be placed

with either of the child's parents within a reasonable time or should not be placed

with the child's parents if either of the following conditions exist:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
> . . .

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.]

{¶44} In the case before us, the evidence shows that Appellant complied with some parts of her case plan. However, she did not comply with the requirement to attend the children's medical appointments. One of the conditions that led to the children's removal from the home was Appellant's failure to consistently attend their medical appointments. In the past, Appellant's failure to attend to P.G.'s medical needs led to P.G. developing a severe blockage that required emergency medical treatment. The court also pointed out that in May 2022, when the agency became involved with Appellant and the five children who had been born at the time, each child was "suffering from varying degrees of failure to thrive," and their development was not age appropriate. Additionally, in April 2023, when the agency removed the children from the home, P.G. was found wearing a pull-up diaper with dried stool in it, and she had a severe blockage that required emergency medical treatment. This court has recognized that a parent's past history is one of the best predictors of future behavior. *In re West*, 2005-Ohio-2977, ¶ 28 (4th Dist.), citing *In re A.S.*, 2004-Ohio-6323, ¶ 37 (12th Dist.) ("Past history is often the best predictor of future conduct. While surely people can change, the facts do not indicate that [the biological parents] have the motivation or ability to follow through and do what is necessary to regain custody of their

child."); *In re Vaughn*, 2000 WL 33226177, *7 (4th Dist. Dec. 6, 2000) ("To further the interests of the children, the court must consider any evidence available to it, including a parent's pattern of conduct. Some of the most reliable evidence for the court to consider is the past history of the children and the parents."); *see also In re Brown*, 60 Ohio App.3d 136, 139 (1st Dist.1989) (stating that the mother's "past parenting history and her ability to comply with prior reunification plans regarding her other children were relevant considerations in the juvenile court's dispositional determination" to award a children services agency permanent custody). Appellant's past behavior could have given the court grave concern that she would not ensure that the children's medical needs would be met in the future.

{¶45} Although Appellant testified at the hearing that she had been giving P.G. daily enemas before her removal from the home, the trial court was not required to believe Appellant's testimony and could have determined that P.G.'s serious condition undermined Appellant's testimony. Moreover, during the agency's involvement with the family, Appellant attended only one medical appointment. Appellant thus did not demonstrate that she would attend to the children's medical needs.

{¶46} Therefore, even if the trial court erred by determining that the children had been in the agency's temporary custody for 12 or more months of a consecutive 22-month period, its finding that the children could not be placed with

Appellant within a reasonable time or should not be placed with her is not against the manifest weight of the evidence.

Best Interest

{¶47} If a trial court determines that a child has been in a children services agency's temporary custody for 12 or more months of a consecutive 22-month period (or finds the existence of any of the other R.C. 2151.414(B)(1) conditions), before the court may grant the agency temporary custody of a child, the court also must conclude that placing the child in the agency's permanent custody is in the child's best interest. *See* R.C. 2151.414(B)(1).

{¶48} R.C. 2151.414(D)(1) requires a trial court to consider all relevant, as well as specific, factors to determine whether a child's best interest will be served by granting a children services agency permanent custody. The specific factors include: (1) the child's interaction and interrelationship with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the child's wishes, as expressed directly by the child or through the child's guardian ad litem, with due regard for the child's maturity; (3) the child's custodial history; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.

{¶49} Determining whether granting permanent custody to a children services agency will promote a child's best interest involves a balancing of "all relevant [best interest] factors," as well as the "five enumerated statutory factors." *In re C.F.*, 2007-Ohio-1104, ¶ 57, citing *In re Schaefer*, 2006-Ohio-5513, ¶ 56; *accord In re C.G.*, 2008-Ohio-3773, ¶ 28 (9th Dist.); *In re N.W.*, 2008-Ohio-297, ¶ 19 (10th Dist.). However, none of the best interest factors requires a court to give it "greater weight or heightened significance." *C.F.* at ¶ 57. Instead, the trial court considers the totality of the circumstances when making its best interest determination. *In re K.M.S.*, 2017-Ohio-142, ¶ 24 (3d Dist.); *In re A.C.*, 2014-Ohio-4918, ¶ 46 (9th Dist.). In general, "[a] child's best interest is served by placing the child in a permanent situation that fosters growth, stability, and security." *In re C.B.C.*, 2016-Ohio-916, ¶ 66 (4th Dist.), citing *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 324 (1991).

{¶50} In the case before us, Appellant has not raised any specific arguments regarding the trial court's best interest determination. As we noted in previous cases, when a parent does not present any analysis of the best interest factors, we ordinarily will not create that analysis for the parent. *See In re J.C.*, 2023-Ohio-3299, ¶ 33 (4th Dist.); *In re B.P.*, 2021-Ohio-3148, ¶ 56 (4th Dist.); *In re B.M.*, 2020-Ohio-1376, ¶ 37 (4th Dist.). Indeed, an appellant, not an appellate court, has the duty " 'to construct the legal arguments necessary to support the appellant's

assignments of error.' " *Cook v. Ohio Dept. of Job & Family Servs.*, 2015-Ohio-4966, ¶ 40 (10th Dist.), quoting *Bond v. Canal Winchester*, 2008-Ohio-945, ¶ 16 (10th Dist.); *accord State v. Quarterman*, 2014-Ohio-4034, ¶ 19 (stating that appellate court is "not obligated to search the record or formulate legal arguments on behalf of the parties").  For this reason, we simply note that the record contains ample clear and convincing evidence to support the trial court's best interest determination.

{¶51}  Additionally, we observe that the GAL indicated that the children are thriving in the foster homes and have established significant bonds with their foster families.  The GAL further recommended that the court place the children in the agency's permanent custody.  *In re C.F.*, 2007-Ohio-1104, ¶ 56 (observing that "[t]he trial court has discretion to accept the testimony of the guardian ad litem on the child's wishes").

{¶52}  Rather than focusing on the children's best interests, Appellant's argument instead focuses upon her alleged case plan compliance.  However, as we have recognized in previous cases, a parent's efforts to improve the parent's situation, or to comply with a case plan, may be relevant, but not necessarily conclusive, factors when a court evaluates a child's best interest.  *See In re Ca.S.*, 2021-Ohio-3874, ¶ 39-40 (4th Dist.); *In re B.P.*, 2021-Ohio-3148, ¶ 57 (4th Dist.); *In re T.J.*, 2016-Ohio-163, ¶ 36 (4th Dist.), citing *In re R.L.*, 2014-Ohio-3117, ¶ 34

(9th Dist.) ("although case plan compliance may be relevant to a trial court's best interest determination, it is not dispositive of it"); *In re K.M.*, 2019-Ohio-4252, ¶ 70 (4th Dist.), citing *In re W.C.J.*, 2014-Ohio-5841, ¶ 46 (4th Dist.) ("[s]ubstantial compliance with a case plan is not necessarily dispositive on the issue of reunification"); *accord In re S.C.*, 2015-Ohio-2280, ¶ 40 (8th Dist.) ("[c]ompliance with a case plan is not, in and of itself, dispositive of the issue of reunification"); *In re C.W.*, 2020-Ohio-6849, ¶ 19 (2d Dist.) ("[c]ase-plan compliance is not the only consideration in a legal custody determination"). "Indeed, because the trial court's primary focus in a permanent custody proceeding is the child's best interest, 'it is entirely possible that a parent could complete all of his/her case plan goals and the trial court still appropriately terminate his/her parental rights.' " *W.C.J.*, 2014-Ohio-5841, at ¶ 46 (4th Dis.), quoting *In re Gomer,* 2004–Ohio–1723, ¶ 36 (3d Dist.); *accord In re A.S.,* 2014–Ohio–3035, ¶ 32 (8th Dist.). Thus, a parent's case plan compliance will not preclude a trial court from awarding permanent custody to an agency when doing so is in the child's best interest. *See In re S.M.*, 2023-Ohio-2686, ¶ 44 (4th Dist.). Accordingly, even though Appellant may have complied with some parts of the case plan, her compliance does not override the children's best interest.

{¶53} Given that the GAL indicated that the children have been thriving while in the agency's temporary custody, the trial court could have quite

reasonably decided not to experiment with their welfare by continuing them in custodial limbo to give Appellant more time to demonstrate that she would attend all of their future medical appointments and be able to provide proper care for their medical needs. We repeatedly have recognized that trial courts need not experiment with a child's welfare:

> " '[A] child should not have to endure the inevitable to its great detriment and harm in order to give the . . . [parent] an opportunity to prove her suitability. To anticipate the future, however, is at most, a difficult basis for a judicial determination. The child's present condition and environment is the subject for decision not the expected or anticipated behavior of unsuitability or unfitness of the . . . [parent]. . . . The law does not require the court to experiment with the child's welfare to see if he will suffer great detriment or harm.' "

*W.C.J.*, 2014-Ohio-5841, at ¶ 48 (4th Dist.), quoting *In re Bishop*, 36 Ohio App.3d 123, 126 (5th Dist.1987), quoting *In re East*, 32 Ohio Misc. 65, 69 (C.P. 1972).

## Conclusion

{¶54} Based upon all of the foregoing reasons, we cannot say that the evidence weighs heavily against the trial court's judgment granting the agency permanent custody of the children. Accordingly, based upon the foregoing reasons, we overrule Appellant's sole assignment of error and affirm the trial court's judgment.

**JUDGMENT AFFIRMED**.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Meigs County Common Pleas Court, Probate Juvenile Division to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. and Wilkin, J. concur in Judgment and Opinion.

For the Court,

_____

Jason P. Smith
Presiding Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**